Borough of Aliquippa, Appellant, *v.* The Pittsburgh & Lake Erie Railroad Company.

Argued April 13, 1928.

Before Porter, P. J., Henderson, Trexler, Keller, Linn, Gawthrop and Cunningham, JJ.

*Richard S. Holt,* for appellant.

*Thompson Bradshaw,* of *May & Bradshaw,* for appellee.

OPINION BY PORTER, P. J., July 12, 1928:

This is a scire facias on a municipal claim, filed by the borough against two separate pieces of land owned by the defendant. The borough, without a petition of property owners, enacted an ordinance providing for the grading and paving of the roadway of South Hopewell Avenue and for the payment of the cost of the improvement, one-third by the borough and two-thirds by an equal assessment on the foot-front of real estate abutting upon the line of the street as improved. After the completion of the work the borough filed a claim against the abutting property of the defendant, having a frontage of 1068.20 feet, at the rate of five dollars and nine hundred and thirty-nine one thousandths per foot-front, amounting to $6344.03. This frontage included two pieces of land, one having a frontage of 891½ feet on the street and the other having a frontage of 174½ feet thereon. The defendant filed an affidavit of defense to the scire facias, averring that the entire frontage of its property which was assessed was an essential part of its roadbed and not liable for a municipal improvement. Upon the trial the defense as to the second piece of

land, having a frontage of 174½ feet on the avenue, was abandoned and the defendant admitted liability for the assessment of that portion of its land, which eliminated all controversy as to that particular parcel.

At the trial, it appeared in evidence that the first parcel of land described in the claim and having a frontage of 891½ feet on the avenue extended from the line between the Boroughs of Aliquippa and Woodlawn, northwardly to a point a short distance north of the passenger station of defendant company. The defendant produced evidence, which was uncontradicted, and clearly established that the passenger station, with its appurtenances and the land set apart in connection therewith, had a frontage of only 86 feet upon the street, said frontage being at the northerly end of the particular parcel here involved. The defendant also produced evidence that that part of the parcel lying south of the frontage occupied by the station and its appurtenances, and having a frontage of 805½ feet on the street, was a slope extending from the graded portion of its right of way up to the curb line of the street as improved; that this slope was necessary for the protection of the tracks upon its roadbed to avoid the danger of slides from the hillside, and that there were no buildings or other structures upon that slope. The chief engineer of the defendant company testified that, in 1910, owing to the condition of increased traffic and the necessity for installing additional tracks upon the easterly side of their right of way to accommodate the local shippers, the company was compelled to relocate its main tracks and for that purpose acquired title to the land on the westerly side of its right of way and extending westwardly up to South Hopewell Avenue; having acquired title to the land, it proceeded to excavate the ground, which was a hillside, located its two southbound main tracks upon the westerly side of the new location, with a side track, west of the main

tracks, for part of the distance, and constructed a ditch west of these tracks, for the purpose of taking care of the water which fell upon the tracks and came from the hillside; that this excavation rendered it necessary to either make a slope west of the tracks, or build a retaining wall which would be much more expensive and that the company elected to grade the slope and did grade that slope, in harmony with the principles of sound engineering, the inclination of the slope being the standard of one and one-half feet to one foot of perpendicular and that that slope extended not only to the building line of South Hopewell Avenue, but actually extended to the curb line of the improved street.

The plaintiff called in rebuttal of this testimony Mr. Baker, who, while a registered civil engineer, admitted that he had not had a great deal of experience in railroad construction. He testified in chief that the slope from South Hopewell Avenue down to the flat of the tracks was not necessary for the proper maintenance of the defendant company's property. When asked on cross-examination: "Q. Do you mean that that slope could be done away with? A. As I see it this slope could just as readily apply to Hopewell Avenue; in other words, the railroad company has all the land necessary for all the purposes for which they are using it there, and all they seem to need, without the slope." He explicitly testified on cross-examination that the street was 20 feet above the level of the railroad tracks at the southern line of the station house lot and that the elevation gradually decreased until at the line of Woodlawn Borough it was 15 feet. He was then asked: "Q. When you say that this slope is not necessary, do you mean that it could be removed, and that the properties of the railroad company and Hopewell Avenue would remain as they are now? A. Not without some other means of support. Q. Then your opinion when you said the slope was not necessary, was

that the slope could be removed, but that if it was, it would be necessary to substitute in its place a retaining wall? A. I mean that. It is self-evident that if the slope was removed you would have to build a retaining wall to support South Hopewell Avenue; but I don't see that that is necessary for the maintenance of the railroad, because they are using all the ground that they seem to need, without interfering with this ground in question." Further in the cross-examination, he was asked: "Q. You concede that if this shoulder were removed it would be necessary to construct a retaining wall along South Hopewell Avenue? A. That would be true if you removed all the embankment. Q. If you removed it you would have to construct a retaining wall, and if you did not do that, South Hopewell Avenue would slide into the ditch and on the railroad company's property? A. There would have to be some way to retain that street. Q. So the fact is that in the operation of these tracks and the lines and system of the defendant company, they have a choice of two methods of protecting their tracks and property from such slides; one by this slope which keeps the earth in a state of natural repose, and the other by the method of the retaining wall? A. That is correct." This witness distinctly admitted that the construction of the retaining wall would be more expensive than the retention of the slope. He further testified: "Q. In the construction of trackage is it not a fact that a slope in the state of natural repose is as good protection to the roadbed as a concrete retaining wall? A. I think that is so." This was the only witness called by the appellant to testify as to the existing conditions and the necessity for the maintenance of the slope for the protection of the roadbed of the defendant company. His testimony is only capable of the construction that if the slope were removed the defendant company would have to build a retaining wall in order to support the earth above its tracks.

The cross-examination of the chief engineer of the defendant company by the learned counsel for the appellant clearly indicates that his view of the law is that because the railroad company has cut into the slope, in order to do so constructing a concrete retaining wall along the line of South Hopewell Avenue and there constructed its station house, that they might in the future do the same thing with the slope at other points and thus erect other buildings upon the parcel of land in question, and that this being so it cannot be held that the slope is necessary to protect the tracks and for that reason an essential part of the roadbed. The learned counsel for the appellant admits in his brief that: "The easterly line of this piece of land, from the passenger station southwardly, extends along the side of the slope several feet west of the foot thereof." There is not a scintilla of evidence which would warrant a finding that the slope does not extend to the curb line of the street. The evidence produced by both the appellee and the appellant clearly established that that part of the parcel of land in question, against which the borough asserts the right to maintain its claim, is located upon the face of the slope. We are here dealing with existing conditions. When the railroad company acquired title to the land and re-located its tracks with the slope extending from the level of the tracks up to the curb line of South Hopewell Avenue, it was within the discretion of the officers of the company to build a retaining wall alongside of the ditch which drained the water from its tracks and from the hillside, or to construct the slope in a reasonable manner and thus protect its roadbed from slides of earth upon its tracks, which would involve danger to the passengers it was its public duty to transport. They elected to grade the tracks and construct the slope, and their judgment in the matter is conclusive in the absence of evidence of a manifest abuse of discretion.

The defendant having admitted that the second lot described in the lien, having a frontage of 174½ feet on the street was lawfully subject to assessment for the improvement of the street and that the portion of the first lot described in the lien, which was occupied as station house property, was also subject to assessment, the court gave binding instructions to the jury to find verdicts for the plaintiff for the number of feet frontage thus admitted to be liable, at the rate per foot-front fixed by the municipal authorities, there being no dispute as to the total cost of the improvement. The real question in the case was whether the 805½ feet of frontage, being the part of the first lot described in the lien extending from the station house property southwardly to the line of Woodlawn Borough, and consisting of the slope extending from the graded portion of defendant's right of way up to the street, was subject to assessment. The learned judge of the court below directed the jury to make a separate finding as to that parcel of the tract and determine whether the maintenance of the slope was necessary to protect the graded portion of the right of way upon which the main tracks of the defendant company were located, and if they found that the slope was not necessary to protect the roadbed then to find a verdict in favor of the plaintiff for that amount of frontage, at the rate per foot assessed against the property, and in case they so found to find a general verdict for the full amount of plaintiff's claim. He instructed the jury to find a verdict in favor of the defendant as to this 805½ feet of frontage if they found that the slope was necessary for the protection of the roadbed of the defendant company. The defendant submitted a point requesting binding instructions in its favor as to the 805½ feet of frontage, which point the court refused. The plaintiff submitted a point requesting the court to charge: ''That while the roadbed and right of way of the railroad are exempt from assessment for municipal

improvements, this exemption does not extend to station houses, platforms and other property of the railroad, not absolutely necessary to the exercise of the franchise of the corporation,'' which point the learned judge affirmed, without qualification. It thus appears that the question left to the jury was whether the maintenance of this slope was absolutely necessary for the protection of defendant's roadbed. The jury found a verdict in favor of the plaintiff for the entire claim. The defendant moved for a new trial and for judgment non obstante veredicto as to that part of the claim involving the assessment on the 805½ feet of the frontage of the slope upon the street, which assessment amounted to $4783.85. The learned judge of the court below, after mature consideration, entered judgment in favor of the defendant, notwithstanding the verdict, as to that part of the slope in question, and judgment was entered in favor of the plaintiff for the remainder of the frontage of the property upon the street, at the rate per foot fixed by the borough authorities.

The learned counsel representing the plaintiff contends that the court erred in admitting evidence as to the manner in which the different parts of the property were used, and in permitting the jury to make findings as to different parts of the property, based on their determination of the question whether the maintenance of the slope was absolutely necessary. He contends that as the defendant admitted that the station house was located upon the lot first described in the claim and that the frontage of 86 feet attached to the station house was properly subject to assessment, the court should have directed a verdict for the full amount of the assessment, and that subsequent proceedings to enforce the judgment, if they had resulted in a sale of the property, would have only passed to the purchaser the station house and the lot upon which it was situated and that the other portion of the lot would be subject to whatever rights of way the de-

fendant had therein. This contention ignores the fact that this assessment was made according to the foot-front rule and that the amount of any assessment which could lawfully be made was dependent upon the number of feet which the property, that is the assessable property, fronted upon the street. Assessment under the foot-front rule must be made by an equal assessment, per foot-front, upon the property lawfully assessable abutting on the street: McGonigle v. Allegheny, 44 Pa. 118. The first opportunity which this defendant had to challenge this assessment was upon the trial of this action of scire facias on the claim and it was entirely competent for it to offer evidence that the borough authorities had made a mistake in computing the amount for which the property of the defendant should be assessed, in that they included in such computation property which was not subject to assessment. This went directly to the amount which the borough was entitled to recover upon its claim. To permit the borough to assess, under the foot-front rule, 891½ feet of property of which 805½ feet of frontage was not legally liable to assessment, would, in effect, permit the borough to recover ten times as much as the amount for which the remaining 86 feet of frontage could lawfully be assessed: Scranton v. Koehler, 200 Pa. 126. The amount of the claim against the different parcels of the property could be clearly ascertainable, for the borough had, by the manner in which it proceeded, fixed the amount which could lawfully be assessed upon each foot of frontage. It was, therefore, entirely competent to introduce evidence establishing that any part of that frontage could not be assessed for the improvement. The evidence clearly established that the 805½ feet of frontage along the slope was, in the uses to which it was devoted, entirely different and distinct from the other portions of the property. Had the assessment been made by viewers and upon the basis of the benefits resulting to the prop-

erty from the improvement, a different question might be presented. The court did not err in considering the question of the liability of the 805½ feet of the slope above defendant's tracks as distinct from the liability of the other portions of the property against which the claim was filed.

A railroad company is authorized to condemn by appropriate proceedings for roadbed a strip of land of the width authorized by statute; and it may, in addition, acquire land for sidings and turnouts for the speedy and safe passage of its cars; land so acquired would properly be termed roadbed, and be exempt from taxation: Philadelphia v. P. & R. R. R. Co., 177 Pa. 298. It has the power to purchase and hold such real estate as may be necessary or convenient for making and constructing its railroad. If it is necessary or convenient to enable the railroad to use its full right of way for track purposes and if the grading of that right of way renders it necesssary or convenient to make cuts and embankments, it has the right to purchase additional land for the purpose of maintaining slopes, and in case of cuts the right of way extends to the top of the slope, and in the case of embankments to the foot of the slope. The right of way is not to be limited to the level of the graded track at the foot of a cut nor to the level at the top of an embankment; it extends to the top of the slope in the first instance, and to the bottom of the slope in the latter: Penna. R. R. Co. v. Braddock Boro., 234 Pa. 312; Rodgers v. Pgh., F. W. & C. Ry. Co., 255 Pa. 466.

This defendant, when in 1910 it re-located its main tracks, purchased the property here involved, which was then a hillside. It was necessary to grade the line for the construction of its two southbound main tracks, and this involved a cut into the hillside. It is manifest that it would have been unsafe to leave a perpendicular embankment of earth close to the tracks. The officers of the company were confronted

by the necessity of properly taking care of this situation. They had the alternative of so grading the hillside as to constitute a slope, which, considering the character of the material, would reasonably protect the roadbed from slides, or of constructing a retaining wall. In the exercise of proper discretion, so far as the evidence indicates, they chose to grade off the earth and construct a slope extending up to the line of the street, which was from 15 to 20 feet higher than the railroad tracks. There was no dispute, under the evidence, that the wall would have been the more expensive manner of construction, nor is there any assertion, in the evidence, that the slope was not constructed in a manner in entire harmony with the principles of good engineering, nor is there any evidence that the slope was of greater extent than reasonably necessary. The slope was an essential incident appurtenant to the right of way and the level roadbed upon which the tracks were laid. The company was not bound, in the construction of its line, to resort to the more expensive expedient of constructing a wall to protect its tracks. The court might properly have affirmed defendant's point requesting binding instructions and did not err in entering judgment in favor of the defendant as to this particular part of the frontage of the slope upon the street. The assignments of error are overruled.

The judgment is affirmed.