Lacey *v.* Montgomery et al., Appellants.

642

Argued April 12, 1956. Before RHODES, P. J., HIRT, GUNTHER, WOODSIDE, ERVIN, and CARR, JJ. (WRIGHT, J., absent).

*Morris M. Terrizzi,* with him *Henderson & Terrizzi,* for appellants.

*Samuel H. Stewart,* with him *Warren R. Yocum,* for appellee.

OPINION BY GUNTHER, J., July 17, 1956:

Appellee, Elizabeth Lacy, instituted an action of ejectment to establish title to 193 acres and 72 perches of land in Dublin Township, Huntingdon County. Appellants, Boyd Montgomery and I. Cloyd Taylor, disclaimed title to all of said land except 9.47 acres. Counsel for the parties stipulated of record that the parcel in dispute is the same land which had been condemned by the Shade Gap Railroad Company in 1884 by appropriate proceedings and which, by proper authorization, was abandoned by its successor railroad on December 30, 1947.

The parties involved claim their respective titles from a common source. William Norris et ux., by deed dated July 30, 1852 conveyed a tract of 200 acres, more or less, to James Shered. James Shered died in 1877 seized of this property and by his will devised an undivided one-half thereof to his wife, Hadasah, and the remaining one-half to his brother, Joseph, for life, with remainder to the testator's cousins, William, James, Betsy and Margaret Harper.

In 1884, pursuant to the provisions of the Act of February 19, 1849, P. L. 79, section 10, 67 P. S. section 271, the Shade Gap Railroad Company condemned the 9.47 acre parcel of land in dispute. By deed dated August 18, 1887, the cousins of James Shered conveyed their undivided one-half interest to Hadasah Shered "except so much as has been condemned for use of the Shade Gap Rail Road Company, and the privileges granted said Road, also the lots sold to Dr. Louis Royer and Levi Piper." By deed dated September 9, 1887, Hadasah Shered conveyed an undivided one-half interest therein to N. A. MacDonald with a similar exception or reservation. N. A. MacDonald died seized thereof in 1897 and devised his one-half interest to his children, Hattie (also known as Harriet) Jennie, (who predeceased the testator) Francis C. and Mary McFarland. Hadasah Shered died in 1901, intestate and seized of an undivided one-half interest, leaving to survive her as her only heirs at law Hattie, Francis C. and Mary McFarland, in whom said interest vested. Mary McFarland died in 1929, intestate and seized of her undivided one-third interest, leaving to survive her as her only heir at law, her daughter, Elizabeth Lacy, in whom said interest vested. In 1932, Harriet MacDonald died intestate, seized of her undivided one-third interest, leaving to survive her as her only heir at law, her daughter, Elizabeth Lacy, in whom said

interest vested. In 1932, Harriet MacDonald died intestate, seized of her undivided one-third interest, and left to survive her as her only heirs at law, Francis C. MacDonald and Elizabeth Lacy, thereby vesting each of said heirs with equal undivided interests in said property. All parties are in full accord up to this point and claim their respective title from this common source.

Francis C. MacDonald, by deed dated March 25, 1932, conveyed for $1.00 to his niece, Elizabeth Lacy, "all the grantor's right, title and interest," inter alia, being an undivided one-half interest in the original tract. The description concluded with these words: "Excepting so much as has been condemned for use of the Shade Gap Railroad Company and also excepting lots sold to Dr. Lewis Royer and Levi Piper." This deed was by general warranty.

The appellee claimed in the court below that this deed divested her uncle of all his right, title and interest in the parcel of 9.47 acres now in dispute, including his reversionary interest or possibility of reverter. The jury so found in her favor.

Appellant, I. Cloyd Taylor, relies upon a subsequent deed given by Francis C. MacDonald, dated February 14, 1951, wherein the grantor, in consideration of $1.00, purported to grant and convey to I. Cloyd Taylor "all of the reversionary interest of the grantor" in and to the 9.47 acres of ground by metes and bounds. In addition, both appellants rely upon adverse possession of the 9.47 acre tract in question.

Following the condemnation proceedings in which the Shade Gap Railroad Company acquired a right of way through the larger tract of 193 acres, all the assets of said railroad became vested in its successor, East Broad Top Railroad and Coal Company. Subsequent to December 30, 1947, believing the successor railroad

had completely abandoned its right of way over the property in question, Elizabeth Lacy brought suit in ejectment against the successor railroad for the parcel in question and obtained judgment therein for the same. On appeal to this Court, we held that the railroad had acquired by condemnation proceedings a base or conditional fee, terminable on the cesser of the use for railroad purposes. *Lacy v. East Broad Top Railroad and Coal Co.,* 168 Pa. Superior Ct. 351, 77 A. 2d 706. In that case the parcel of land was described as being 10.42 acres, but it is conceded by counsel that the same parcel of land is now in dispute and is computed as containing 9.47 acres.

On this appeal, appellants contend that the provision "excepting so much as has been condemned for use of The Shade Gap Railroad Company" contained in the deed from Francis C. MacDonald to appellee is an exception of the land, and the subsequent deed from Francis C. MacDonald to the appellant, I. Cloyd Taylor, vested in him a fractional interest in said land.

Upon properly authorized abandonment by the railroad, the base fee acquired on condemnation reverted to those who were the owners at the time of the condemnation, their heirs or assigns. This reversionary interest or possibility of reverter was subject to alienation by the grantor: *Calhoun v. Hays,* 155 Pa. Superior Ct. 519, 39 A. 2d 307; Restatement of Property, section 159 (1). Such an estate is a freehold, absolute in possession, owned in severalty, descendible to his heirs, and may be aliened or incumbered. *Anania v. Serenta,* 275 Pa. 474, 119 A. 554.

Black's Law Dictionary (3rd Ed.) defines a base fee as "a determinable or qualified fee; an estate having the nature of a fee, but not a fee simple absolute." A

qualified fee is defined as "a fee having a qualification subjoined thereto, and which must be determined whenever the qualification annexed to it is at an end; otherwise termed a 'base fee'." See also *Loechel v. Columbia Borough School District*, 369 Pa. 132, 85 A. 2d 81.

Appellee maintains that when the railroad abandoned the tract of 9.47 acres on December 30, 1947, the base fee held by the railroad terminated and the fee thereto vested in her as assignee, devisee and heir at law. Appellants deny that appellee owns the fee to said tract but concede she is a co-tenant with I. Cloyd Taylor. Taylor relies upon the deed from Francis C. MacDonald to him wherein MacDonald's reversionary interest to said tract was purportedly conveyed. It is necessary to determine, therefore, whether Francis C. MacDonald retained a reversionary interest to the 9.47 acres or whether he parted with it in his deed of March 25, 1932 to his niece, Elizabeth Lacy.

A reading of the deed of Francis C. MacDonald to Elizabeth Lacy clearly indicates that the grantor intended to convey to his niece every right and interest he had with respect to the property therein described. The entire tract involved had been in the family since 1852 when William Norris conveyed the original 200 acre tract to James Shered. MacDonald was unmarried, lived in another state, was advanced in years and for a nominal consideration conveyed his undivided one-half interest in the homestead and other lands owned by him in Huntingdon County to his niece, owner of the other one-half interest. These circumstances, coupled with the fact that the conveyance was described by metes, bounds and quantity, which included the strip of land condemned by the railroad, would indicate to us that the grantor clearly intended to convey every right and interest he had in the world

with respect to the property. There was no indication or likelihood then of the railroad abandoning its right of way. At the time of the trial, appellee testified she was 63 years of age. Francis C. MacDonald, her mother's brother, was a generation older. It appears reasonable to infer that MacDonald intended to divest himself of all title to his niece before he passed away.

The scrivener copied in almost the same form the exception or reservation relating to the 9.47 acres that had appeared in the deed from the heirs of James Shered to Hadasah Shered and in the deed from Hadasah Shered to N. A. MacDonald. It is difficult to conceive of any intent on the part of MacDonald to withhold any reversionary interest or possibility of reverter in himself under these conditions. Why would he have been interested in retaining a reversionary interest or possibility of reverter to an undivided one-half interest in approximately nine and a half acres when he lived in another state and by his deed was granting to his niece his entire interest in all of his real estate in Huntingdon County? The excepting clause was no doubt intended to call attention to the outstanding interest of the railroad and to take this portion out of the general warranty of his deed.

We believe that the instant case is controlled by the case of *London v. Kingsley*, 368 Pa. 109, 81 A. 2d 870, wherein it appeared that in 1828 Isaac London leased certain coal lands to Meredith for a term of 100 years and in 1840 conveyed to Konyon "excepting and reserve of coal to Thomas Meredith" together with all and singular the mines, minerals, reversions and remainders, and also all the estate, right, title, interest, claim and demand whatsoever of the grantor. It was held that the 1840 conveyance effectively conveyed the grantor's reversionary interest in whatever coal remained after the expiration of the 100 year lease to

Meredith. The Supreme Court stated that when London conveyed to Kenyon and used the words "all the estate, right, title, interest . . . , claim and demand whatsoever of the said party of the first part in law or equity" it is difficult to conceive of any broader language that could have been used in the deed. Similar but more abbreviated language was used by MacDonald in his conveyance to his niece when he conveyed "all the grantor's right, title and interest in and to all the following described real estate."

The primary rule to be observed is that the real intention of the parties, particularly that of the grantor, is to be sought and carried out whenever possible, when contrary to no settled rule of property which specifically ingrafts a particular meaning upon certain language or when not contrary to, or violative of, settled principles of law or statutory prohibitions. 16 Am. Jr., Deeds, sec. 168. To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties, and the conditions existing when it was executed: *Baederwood, Inc. v. Moyer,* 370 Pa. 35, 87 A. 2d 246; *Corey v. Edgewood Borough (No. 1),* 18 Pa. Superior Ct. 216.

An *exception* has been defined as the withholding from the operation of the deed something existent which otherwise the deed would pass to the grantee. A *reservation* narrows, limits or cuts down that which the grantee otherwise would take. A reservation does not affect the description of the property conveyed but retains to the grantor some right upon the property, whereas an exception operates upon the description and withdraws the excepted property from the description. Whether a provision in a deed is actually an exception or reservation must, regardless of the specific designation as one or the other, be determined by its con-

text and by the intention of the parties, particularly that of the grantor. 26 C.J.S., Deeds, sec. 137. Where the terms of a deed are doubtful, the court will adopt construction which is most strongly in favor of the grantee and against the grantor: *Walker v. Walker*, 153 Pa. Superior Ct. 20, 33 A. 2d 455; *Ransberry v. Brodhead's Forest and Stream Assoc.*, 315 Pa. 513, 174 A. 97.

We must read the clause appearing in the 1932 deed to appellee in connection with the clause as it appeared in the two former deeds. While the language of the clause in question is not precisely the same in each of said three deeds, it is apparent that the scrivener intended to have them carry the same meaning. In each of the three deeds, the clause specifically reserves or excepts the use of the railroad to the right of way in question. In the first two deeds, the scrivener also used the expression: "and the privileges granted said Road." Each of these expressions clearly indicates that the fee simple absolute was reserved and the railroad had certain uses and privileges to said strip of ground. To hold otherwise would be in complete disregard of the words "use" and "privileges." While the word "privileges" does not appear in the MacDonald to Lacy deed, the word "use" does. It is apparent that the scrivener did not intend in any way to change what had been previously reserved.

We also note that the reservation or exception was limited to the use of the land by the railroad and did not relate to the fee in the real estate. For this reason, the reservation or exception will be construed as excluding from the operation of MacDonald's grant to his niece merely an easement or use and not the fee used for the right of way. The proposition of law on this matter is summarized in 26 C.J.S., Deeds, sec. 140 g (5):

Thompson on Real Property (Permanent Ed. sec. 3496) summarizes the law of the purpose and effect of a reservation or exception of an existing highway as follows: "An exception or reservation of an existing highway passing through the granted land is usually for the purpose of relieving the grantor from his covenant against encumbrances, and the fee in the land so excepted passes to the grantee. The grantor might make it plain that he retained the fee in the highway in himself; and, on the other hand, the exception may be made in terms that make it certain that the grantor did not intend to retain the fee in himself, but only to guard against any claim that might be made under his covenants. This is the case where the exception was made in a clause which stated the quantity of the land exclusive of the county road, which the grantor reserved."

Appellants contend that because MacDonald executed what purports to be a deed of his reversionary interest to said parcel of land to I. Cloyd Taylor in 1951, the giving of such a deed must be considered in evaluating his original deed to his niece in 1932. Such contention is untenable. The intention of the parties is to be determined from the situation of the parties as of the time when the instrument was executed. We therefore hold that Francis C. MacDonald parted with all of his interest, present and expectant, when he conveyed to the appellee. Any subsequent attempt to convey to another was a nullity and, consequently, I. Cloyd Taylor had no valid paper title to the 9.47 acres.

The other contention of appellants relates to the alleged error in excluding the testimony offered by them to the effect that I. Cloyd Taylor had occupied and used a portion of the 9.47 acre tract for a period in excess of 21 years adversely, continuously, openly

and notoriously, so as to vest in him a prescriptive right. When title to this same parcel of land was before us in *Lacy v. East Broad Top Railroad and Coal Co.*, supra, we held that the land thus acquired by the railroad was held by it as a public trust, which it may abandon only with the consent of the Commonwealth. Appellants concede that there can be no adverse possession prior to abandonment of any part of the railroad right of way but argue that part of the strip of land comprising the 9.47 acres was not used for railroad right of way purposes and that the portion was subject to a claim by adverse possession.

We cannot agree with this contention. A railroad right of way is not confined to the portion of ground occupied by its tracks. The Act of February 19, 1849, P. L. 79, Sec. 10, 67 P.S. Sec. 271, provides that in locating its route, a railroad company shall not exceed 60 feet in width except in the neighborhood of deep cuttings or high embankments or places selected for sidings, turnouts, depots, engine or water stations. The Shade Valley Branch of said railroad joined the main tracks on the land condemned by means of an inverted Y with a turnout in two directions. A railroad may condemn for roadbed a strip of land of width authorized by statute, and may also acquire land for sidings and turnouts. Borough of *Aliquippa v. The Pbg. & L. E. R. Co.*, 94 Pa. Superior Ct. 279. Consequently, within the limits imposed by statute, the extent of the appropriation is in the discretion of the company: Pittsburgh Junction R. Co.'s Appeal, 122 Pa. 511, 6 A. 564; Sharon Railway Co.'s Appeal, 122 Pa. 533, 17 A. 234.

The right of eminent domain can be exercised only for a public purpose intended to benefit the public. *Lance's Appeal,* 55 Pa. 16. Inasmuch as the power of eminent domain can be exercised only for public pur-

pose, it follows that whatever land was condemned by appropriate legal proceedings is impressed with a public trust against which no adverse possession may run. The right of way of a railroad company, whatever its established width, as soon as acquired, is impressed with a public use. It constitutes a public highway. The railroad company holds it in trust for the people of the Commonwealth, which trust is a direct and continuous trust against which no statute of limitations runs. *Conwell v. P. & R. Rwy. Co.*, 241 Pa. 172, 88 A. 417.

In this case, all of the strip of land comprising the 9.47 acres was acquired by the railroad by condemnation. Adverse possession could not begin to run until abandonment had been properly effected. It was agreed to by the parties here involved that the abandonment took place on December 30, 1947. Hence, no adverse possession could have begun prior to this date.

The judgment of the court below is affirmed.

WRIGHT, J., took no part in the consideration or decision of this case.