565 A.2d 852

**BOROUGH OF EDGEWORTH, a municipal corporation**

v.

**Arthur LILLY, Catherine Russo, BHM Company, Exxon Corporation, Consolidated Rail Corporation and Albert J. Veshio.**

**Appeal of Arthur LILLY.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 1989.

Decided Nov. 3, 1989.

Reargument Denied Jan. 16, 1990.

362

Norman J. Cowie, David M. McQuiston, Thomson, Rhodes & Cowie, Pittsburgh, for appellant.

Giles J. Gaca, Joseph W. Cavrich, Grigsby, Gaca & Davies, P.C., Pittsburgh, for Catherine Russo, et al.

Aloysius F. Mahler, David P. Helwig, Pittsburgh, for Consol. Rail Corp., et al.

Before CRAIG and DOYLE, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Arthur Lilly (Lilly) appeals from the order of the Court of Common Pleas of Allegheny County that determined, pursuant to a declaratory action filed by the Borough of Edgeworth (Edgeworth), that a disputed section of Hazel Lane[1] is owned by Catherine Russo (Russo) by virtue of adverse possession. We affirm.

## I. PROCEDURAL HISTORY

Edgeworth commenced the action for declaratory judgment against Lilly, Russo and the other defendants[2] requesting that the trial court determine the rights of the parties relating to a portion of Hazel Lane which abuts Russo's property.[3]

1. Hazel Street was the original reference in early documents.
2. BHM Company, Exxon Corporation, Consolidated Rail Corporation and Albert J. Veshio did not file briefs to this Court on appeal.
3. Hazel Lane, north of Russo's property is an opened public street.

The trial court determined this case in two phases. Phase one determined that an offer of dedication contained in two deeds dated 1864 and 1872, with regard to the disputed section, did not create a public street because the offers of dedication in these deeds were never accepted as public within the twenty-one years prescribed by the Act of May 9, 1889 (Act), P.L. 173, 36 P.S. § 1961. Also in phase one the trial court held that the Act also implicitly applies to the dedication of Hazel Lane made within the 1872 deed as well as explicit dedications by reservation of a street within a plot plan. In the second phase, the trial court determined that 1) Russo had acquired the disputed section by virtue of adverse possession and 2) that even though Duquesne Light, a public utility, had owned the abutting property from 1920 until 1970, that Duquesne Light had not made use of the property in such a manner as to invoke the bar against acquiring property by adverse possession which is held by a public utility or governmental entity for a public purpose. Lilly appeals to this Court from the holdings in both phase one and phase two.[4]

## II. STATEMENT OF FACTS

This dispute arose when Lilly sought approval to operate a marina along the shores of the Ohio River in Edgeworth.[5] The only method of ingress or egress to the proposed docks would be through an underpass owned by the Pittsburgh, Ft. Wayne & Chicago Railroad and along the disputed section, which Russo controlled. Lilly obtained approval from the U.S. Army Corps of Engineers and the Pennsylvania Department of Environmental Resources to operate the

4. Lilly filed notice of appeal to the Superior Court of Pennsylvania on March 10, 1989. By order dated May 15, 1989, the Superior Court, *sua sponte,* transferred the appeal to the Court pursuant to 42 Pa.C.S. § 762(a)(4).

5. Lilly acquired this property be deed dated June 23, 1981. On November 16, 1986, Harvey A. Rickert, Jr. acquired the property abutting the disputed section from Lilly, who reserved easement to the proposed marina property. Mr. Rickert's petition to intervene was denied February 8, 1987, because he requested the court to address ownership of land other than the disputed section.

proposed docks, subject to the necessary zoning approval of Edgeworth.[6]

The disputed section is mentioned in two deeds. By deed dated October 8, 1864, Mary Ann Way, a widow, and the heirs of Abishai Way (Ways), conveyed a parcel of land along the northern boundary of Hazel Lane, now owned by Russo. This deed reserved "however the use of Hazel [Lane] here-in-mentioned which is forty feet wide for a public Street." This was part of a larger parcel along the southern boundary of Hazel Lane which the Ways, by deed dated October 1, 1872, conveyed to Sewickley Gas Company.[7] This deed also contained a reservation of Hazel Lane.

Reserving for Public use Hazel [Lane] forty (40) feet wide and also Street forty (40) feet wide running south 27½ East at right angles with Hazel Street, the centre line of which begins on Centre of Hazel [Lane] one hundred ninety-six and one-half feet from centre of Railway....

Subsequent to these conveyances, the Pennsylvania General Assembly passed the Act which provided in part that:

Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.[8]

Hazel Lane was originally a part of Leet Township in Allegheny County which the Borough annexed in 1903. The parties agree that Leet Township never acted to accept, open or use Hazel Lane. Russo acquired the lot on which her house is located in 1943, by deed from John J. Pollinger, and the adjacent lot in 1944 by deed from the Pittsburgh,

---

6. Such zoning approval was denied.

7. This parcel includes properties now held by Exxon Corporation and Harvey Rickert, Lilly's grantee.

8. Section 46724 of The Borough Code, Act of April 28, 1978, P.L. 76, *as amended,* 53 Pa.S. § 46724 incorporates the basic language of the Act.

Fort Wayne and Chicago Railroad. From 1943 to the present, Russo has maintained the disputed section. Since 1945, a chicken coop, a swimming pool, numerous types of fences and a brick wall have existed on the disputed section sealing it as a method of ingress or egress to the river by anyone except Russo. At the hearing before the trial court, there was testimony that in fact, Edgeworth informed Russo that the disputed section was not a street, but belonged to Russo and was her responsibility to maintain.

Duquesne Light Company (Duquesne Light) purchased the property on the other side of the disputed section in two transactions in 1922 and 1924 and continued ownership until the end of 1970. Edward Wright, retired employee of Duquesne Light, testified that Duquesne Light used the property to house vehicles used to construct and maintain utility lines, transformers, equipment and telephone poles. Utility crews would report for work and the public could pay its utility bills at this location. Mr. Wright also testified that *Duquesne Light never used the right of way* because where the Duquesne Light building was situated, a steep, rocky slope prohibited access via Hazel Lane to the building.

### III. ANALYSIS

#### A.

Lilly appeals from the trial court's determinations in both phase one and phase two on the basis that the trial court erred as a matter of law.

Lilly argues before this Court in regard to phase one of the trial court's opinion that the trial court erred by 1) employing the 1872 deed to commence the twenty-one year limitation set forth in the Act; 2) applying the Act retroactively; and 3) holding that the Act applies to dedications in deeds.

■ First, Lilly argues that the trial court erroneously employed the 1872 deed to commence the twenty-one year

limitation for the dedication of the disputed section as a public street instead of the 1864 deed. Lilly asserts that it was only in the 1864 deed that the Ways had title in fee absolute on both sides of the disputed section so as to legally enable them to reserve the entirety of Hazel Lane for public use. Lilly further asserts that since the 1864 deed is the proper date to begin the running of the twenty-one years, then the dedication would have expired in 1885, four years before the Act was enacted and therefore, the Act would not apply to such dedication. Lilly did not argue to the trial court that the 1864 deed was the proper deed upon which to commence the calculation of the statute of limitations. This argument, not raised before the trial court, cannot be presented upon appeal and is therefore, waived. Pa.R.A.P. 302(a); 2 Pa.C.S. § 703(a); 1 Darlington, McKeon, Schuckers and Brown, Pennsylvania Appellate Practice § 1551:2 (1986).

Next, Lilly argues that the dedications existed before the enactment of the Act and therefore, the Act does not apply retroactively. We do not agree.

The retroactive effect of the Act was addressed soon after its enactment in *Quicksall v. Philadelphia*, 177 Pa. 301, 35 A. 609 (1896). In *Quicksall*, the owners of a tract of land, divided the property into lots and streets and recorded their plan. In 1892, the City of Philadelphia attempted to open the streets, but the landowners objected, arguing that the city was acting beyond the twenty-one year limitation set forth in the Act. Our Supreme Court agreed with the landowners and held that it was too late for the city to assert any right in 1892 founded upon a dedication in 1848.

> The purpose of the act is to relieve land upon which streets have been laid out by the owner, but not opened or used for twenty-one years, from the servitude imposed.
>
> \* \* \* \* \* \*
>
> We have before us only the question of the right of the municipality to open the streets without compensation by

reason of the dedication in 1848. As against this right the act establishes a limitation of time where none before existed. The streets were laid out forty-four years before the commencement of these proceedings. They have not been opened to, or used by, the public. During the whole of this time the beds of the streets have been in the possession of the abutting owners, and used by them for the purpose of quarrying stone. No possession or use was claimed by others. The case, we think, comes within the meaning of the act of 1889, and it is now too late for the city to assert the right founded upon the dedication of 1848.

*Id.*, 177 Pa. at 305, 35 A. at 609.

In subsequent cases, the Act has continued to be applied retroactively, where the street in question had *not* been accepted, opened and used prior to the Act's passage. *See Milford Borough v. Burnett*, 288 Pa. 434, 136 A. 669 (1927) and *Mynk's Appeal*, 175 Pa.Superior Ct. 339, 104 A.2d 173 (1954). Hazel Lane, having never been accepted, opened or used prior to 1889, clearly comes within the purview of the Act.

Lilly concludes his argument of the trial court's holding in phase one asserting that regardless of what *deed* is employed, the language of the Act states that the reservation must be set forth in a "village or town plot or plan of lots," and does not address reservations in deeds. Lilly relies on *Barnes v. Philadelphia Newton and New York Railway Co.*, 27 Pa.Superior Ct. 84 (1905) and *Carradorini Appeal*, 189 Pa.Superior Ct. 624, 152 A.2d 789 (1959), wherein the Superior Court held the Act was not applicable. In *Barnes*, the Superior Court determined that land, described in certain conveyances as Philip Street, was not laid out, but rather was merely named as a boundary and therefore, the Act did not apply. *Barnes* is distinguished because a boundary is not a reservation of a dedication of a public street. In *Carradorini*, the Superior Court again held the Act inapplicable to a conveyance of a street bed to a municipality by deed, where the deed *had been accepted*

by the municipality. *Carradorini's* wholly unique factual situation is not controlling because here the disputed section had never been accepted.

■ We believe that our more recent decision in *Borough of Lehighton v. Katz,* 75 Pa.Commonwealth Ct. 388, 462 A.2d 889 (1983), applies. In *Katz,* we held that an express offer of a dedication by a written deed of dedication resulted in an offer of a piece of land to a municipality for public use. We analogized dedications to the law of contracts, stating that the elements of offer and acceptance must be considered, regardless of whether the dedication was express or implied. The distinction of how the land was offered was not germane to the more important question of whether or not the land in question had ever been accepted. Only where the acceptance takes place, is the contract complete. *Milford Borough.*

■ Additionally, we cite *Township of Millcreek v. A Piece of Land,* 181 Pa.Superior Ct. 214, 124 A.2d 448 (1956), where the Superior Court indicated that an implied offer to dedicate should be inferred from acts, deed, or plot and rested upon the intention of the owners dedicating an abandonment of the property to the community. No particular formality is required to constitute an offer of dedication on the part of the owner, but that only an act which clearly indicates an intention is necessary. *Millcreek.*

■ The parties here agree that as of 1903, when Leet Township was annexed by Edgeworth, that there had been no acceptance of the reservation in the deeds as to the disputed section. Twenty-one years had passed from the 1864 deed as of 1885 and from the 1872 deed as of 1893. The testimony revealed Edgeworth never controlled the disputed section. Because the Act applies retroactively and since the dedication in the deed was not accepted as of 1903, Lilly's arguments that Edgeworth did act upon the dedications in various ordinances [9] is irrelevant, especially because

9. Lilly asserts the disputed section was accepted in 1905 by Ordinance No. 21. Lilly also argues that in 1915 Ordinance No. 112 provided for

paper acts of alleged acceptance of the disputed section were never physically performed. Without some action, even if accepted, the acceptance creates nothing more than a paper street. *Millcreek.* We agree with the trial court that the disputed section was never accepted as a public street.

### B.

Lilly's second argument is that Russo is barred from securing title to the adjoining real property and easement rights held in connection therewith, by adverse possession, since the adjoining property and/or easement was owned by a public utility during the time period in which Russo's asserted adverse possession occurred. Lilly is primarily concerned with the easement contained within the disputed section which would give ingress and egress to his proposed marina on the Ohio River.

■ Lilly does not challenge the trial court's finding that Russo has maintained possession of the disputed section in a manner satisfying the requirements for a claim of adverse possession as set forth in *Tioga Coal Co. v. Supermarkets General Corp.*, 519 Pa. 66, 546 A.2d 1 (1988).[10]

Instead, Lilly focuses upon the fact that Duquesne Light was Russo's adjoining landowner. Lilly asserts that he has succeeded to the easement rights of a public utility and as a matter of law cannot be extinguished by adverse possession. For support of this argument, Lilly relies on *Lacy v.*

the relocation of railroad tracks in the area and changing the grade of Hazel Lane that in 1927, Ordinance No. 175 established the grade of Hazel Lane. These ordinances all post-dated the passing of the twenty-one year limitation set forth in the Act.

10. Pennsylvania continues to follow the standards enunciated in *Conneaut Lake Park, Inc. v. Klingensmith,* 362 Pa. 592, 66 A.2d 828 (1949), that the possession of the land must be actual, open, notorious, exclusive, vigorous and continuous for twenty-one years in such a manner as to be hostile to all. Although Pennsylvania recognizes a difference between adverse possession for the purpose of acquiring title and for the purpose of extinguishing an easement, this argument was not advanced by Lilly, *Estojak v. Mazsa,* 522 Pa. 353, 562 A.2d 271 (1989), and therefore, we need not address this issue.

*Montgomery,* 181 Pa.Superior Ct. 640, 124 A.2d 492 (1956), where the Superior Court held that land abandoned by the railroad could not be adversely possessed. The Court classified the land as "impressed with a public trust." Unlike *Lacy,* the disputed section here was never used by Duquesne Light for any purpose. In another case cited by Lilly, *Hostetter v. Commonwealth,* 367 Pa. 603, 80 A.2d 719 (1951), the appellant was denied compensation for land condemned but not used for over twenty-one years. In *Hostetter,* the appellant argued that he had regained possession because of the abandonment in excess of twenty-one years. This case, too, is distinguishable because no roadway ever existed which could have been utilized by Duquesne Light for a public purpose, nor was the property obtained via condemnation which casts the land as being impressed with a public purpose.

Lilly argues that ownership by Duquesne Light is tantamount to a public use arguing that once property is designated with a public use, the public character of the land is not lost merely because there may have existed some feature of private gain. *Campbell v. Bethlehem Parking Authority,* 20 Pa.Commonwealth Ct. 445, 342 A.2d 114 (1975).

 Mr. Wright, Duquesne Light's retired employee, testified that Duquesne Light never used the disputed property. Appellants' reliance on *Lacy* and *Hostetter* is misplaced because public utility-owned land does not automatically impress such land with a public use or purpose. As the trial court so aptly stated:

> Duquesne Light used the property as a construction warehouse, *a use which is not so unique that it required this particular parcel of land.* This court has been unable to discover any Pennsylvania cases, statutes or regulations that hold that merely because a piece of property is owned by a public utility that the land automatically is impressed with a public use or purpose.

Lilly argues that *Stozenski v. Borough of Forty Fort, Luzerne County,* 456 Pa. 5, 317 A.2d 602 (1974), *non-use* of

an easement does not extinguish such easement. Although non-use may not extinguish an easement, elements of adverse possession will extinguish an easement. *Estojak; see also Graham v. Safe Harbor Water Power Corp.*, 315 Pa. 572, 173 A. 311 (1934). We agree with the trial court that Russo's conduct sufficiently extinguished the easement by adverse possession.

Accordingly, we affirm the orders of the Court of Common Pleas of Allegheny County.

## ORDER

AND NOW, this 3rd day of November, 1989, the orders of the Court of Common Pleas of Allegheny County in the above-captioned matter are hereby affirmed.