Marvin E. HERR and Yvonne
S. Herr, Appellees

v.

Donald C. HERR, Cynthia T. Evansherr, Brian J. Evanko & Dawn R. Evanko, Appellants.

Superior Court of Pennsylvania.

Argued April 29, 2008.

Filed Sept. 26, 2008.

---

John L. Sampson, Lancaster, for appellants.

Matthew J. Creme, Jr., Lancaster, for appellees.

BEFORE: LALLY-GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Donald C. Herr and Cynthia T. Evans–Herr (collectively "the Donald Herrs") and Brian J. Evanko and Dawn R. Evanko (collectively "Evankos") appeal from the order granting the motion for summary judgment filed by Marvin E. Herr and Yvonne S. Herr (collectively "the Marvin Herrs") and denying the motion for summary judgment filed by the Donald Herrs and Evankos. We reverse and remand.

¶ 2 The trial court stated the factual and procedural background of this case as follows:

[The Marvin Herrs] own a tract of land located at 133 Sprecher Road, Pequea Township, Lancaster County, consisting of approximately 146 acres. They acquired title to the premises pursuant to a deed recorded in the Office of the Recorder of Deeds for Lancaster County at Deed Book B, Volume 47, page 541 in 1959. [The Donald Herrs] own the property located at 642 Millwood Road, Pequea Township which Donald C. Herr originally acquired by a deed dated June 13, 1986 and recorded in Deed Book C, Volume 95, page 353. [Evankos] are the owners of property located at 646 Millwood Road, Pequea

* Retired Senior Judge assigned to the Superior Court.

Township which they acquired by deed dated August 31, 1998 and recorded at Deed Book 5882, page 0034.

There were several other defendants named in this action when it was originally begun but by reason of the failure of those defendants to respond to the complaint, judgment has been entered against them by default.

The case involves ownership of a portion of the bed of an abandoned railroad. On May 26, 1875, John and Elizabeth Sener conveyed to the Lancaster and Reading Narrow Gauge Railroad a tract of land containing approximately two acres which formerly was part of the premises at 133 Sprecher Road to be used for railroad purposes. That deed contained a reversion clause in favor of the Seners, their heirs and assigns, to be effective upon the abandonment of the use and cessation of railroad purposes on this strip of land in which event it would automatically revert back to the Seners, their heirs and assigns. On May 25, 1876, the Seners conveyed their property to G.W. Smith, the deed for which excepted to the Seners the land conveyed to the Railroad. Subsequently, George W. Smith conveyed a two plus acre portion of the tract to Milton K. Sener on April 19, 1883. On June 14, 1884, Milton K. Sener transferred 40 perches to Catharine K. Wertz, a predecessor in title to [the Donald Herrs], and 40 perches to Benjamin F. Dagen, the [Evankos'] predecessor in title. Subsequently, the balance of the Smith property was conveyed on January 22, 1888 by Smith's Executors to William and Martha Sprecher, who in turn conveyed it to Abraham Herr on April 1, 1895.

Ultimately, this tract known as 133 Sprecher Road, which was the original tract owned by the Seners, was conveyed to Esther M. Herr who in turn later conveyed it to [the Marvin Herrs [1]] on January 9, 1959.

The legal description in the deeds to both [the Donald Herrs] and [Evankos] describes the rear property line as being 20 feet east or beginning at a stake 20 feet east of the centerline of the Railroad. . . .

The Pennsylvania Railroad, the successor in interest to the Lancaster and Reading Narrow Gauge Railroad, abandoned the property which triggered the reversionary interest and automatically vested title to the property in the Seners or their heirs and assigns. The Pennsylvania Railroad attempted to convey its interest to the property to J. Donald Mylin and Sandra J. Mylin. At that point, the Railroad had no right or title to convey due to the reversionary interest in the Seners . . . [All parties to this litigation] agree that the deed into J. Donald Mylin and Sandra J. Mylin who were originally defendants in this action is a nullity.

At some point after acquiring title, [Evankos and the Donald Herrs] started to use the 20 foot strip between their property line and the center line of the Railroad as their own. [Evankos and the Donald Herrs] are claiming that they obtained title to that portion of the property within their own chain of title from the Seners and that such property reverted to and vested in them upon the abandonment of the Railroad.

This action was commenced on January 4, 2006 as an Action to Quiet Title

1.  In its opinion, the trial court indicates that the Sener property was conveyed from Esther M. Herr "to Appellee Donald C. Herr on January 9, 1959." Trial Court Opinion, 9/5/07, at 3. However, the record reflects that, on that date, Esther M. Herr conveyed the property to Marvin E. Herr. Joint Exhibit A7.

and alternatively for Ejectment, seeking a declaration by the court that [the Marvin Herrs] own the property in fee simple. Of the original Defendants, only [the Donald Herrs and Evankos] defended the action. The balance of the Defendants chose not to be involved and default judgments were entered against them and titled determined to be in [the Marvin Herrs] with respect to that portion of the tract in issue which those Defendants were attempting to utilize as their own.

Trial Court Opinion, 9/5/07, at 2–4.

[The Marvin Herrs] initiated this suit on January 4, 2006 seeking to quiet title to or, in the alternative, for ejectment from, a strip of land located adjacent [the Donald Herrs'] property and to the property of [Evankos]. On March 1, 2007, [the Marvin Herrs] filed a Motion for Summary Judgment. On March 26, 2007 [the Donald Herrs and Evankos] responded to [the Marvin Herrs'] Summary Judgment Motion and also filed their own Motion for Summary Judgment to which [the Marvin Herrs] responded on April 5, 2007. By the order of May 22, 2007, this Court granted [the Marvin Herrs'] motion and denied that of [the Donald Herrs and Evankos]. This appeal followed.

Trial Court Opinion, 9/5/07, at 1.

¶ 3 On appeal, the Donald Herrs and Evankos present three issues:

A. Does a "save and except" clause following the description of land in a deed refer to land excluded from the track being conveyed?

B. Does a grantor's reversionary interest appurtenant to a tract of land which is divided by separate deeds out, each having essentially the same habendum clause referring to reversionary interests, pass to each grantee?

C. Where title to a portion of an abandoned railroad bed is disputed by the reversionary interest assigns of a common grantor, one of which owns property adjacent to the bed and one who does not, does the adjacent owner have a claim superior to the non-adjacent owner?

The Donald Herrs and Evankos' Brief at 4.[2]

¶ 4 The Donald Herrs and Evankos argue that the trial court erred in granting the Marvin Herrs' motion for summary judgment, thereby quieting title to the disputed portion of the abandoned railroad bed in favor of the Marvin Herrs. We are guided by the following principles:

> When faced with a motion for summary judgment, the non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Ertel v. Patriot–News Co.*, 544 Pa. 93, 101–102, 674 A.2d 1038, 1042 (1996), cert. denied, 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996). "[W]e view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in its favor." *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 655 (Pa.Super.1999). Like the trial court,

---

**2.** Notwithstanding what is listed in their Table of Contents, we note that the Donald Herrs and Evankos' Brief violates Pa.R.A.P. 2111(a)(9), (10), (b), and (d) in that it does not include a copy of the trial court's opinion or a Pa.R.A.P.1925(b) statement of errors complained of on appeal.

we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law ... We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Souder v. Rite Aid Corp.*, 911 A.2d 506, 507 (Pa.Super.2006), appeal denied, 593 Pa. 757, 932 A.2d 76 (2007). Moreover, when reviewing a decision in a quiet title action, we must determine whether the trial court's findings are supported by competent evidence. *Dellach v. DeNinno*, 862 A.2d 117, 118 (Pa.Super.2004), *appeal denied*, 584 Pa. 694, 882 A.2d 479 (2005).

■ ¶ 5 According to the Donald Herrs and Evankos, the trial court erred in concluding that John and Elizabeth Sener (collectively "the Seners") did not convey their reversionary interest in the railroad property to George W. Smith. In support of this position, the Donald Herrs and Evankos first argue that the "save and except" clause in the Sener conveyance to George W. Smith referred only to the property conveyed to the Lancaster and Reading Narrow Gauge Railroad ("the Railroad"), not to the Seners' reversionary interest in the railroad property.

■ ¶ 6 A fee simple is "[a]n interest in land that, being the broadest property interest allowed by law, endures until the current holder dies without heirs." Black's Law Dictionary (7th Ed.) at 630. A fee simple determinable is "[a]n estate that will automatically end and revert to the grantor if some specified event occurs.... The future interest retained by the grantor is called a 'possibility of reverter' and is also known as a base fee."

*Id.* at 631; *Emrick v. Bethlehem Township*, 506 Pa. 372, 378, 485 A.2d 736, 739 (1984). The Pennsylvania Supreme Court has explained that:

"[a]n estate in reversion is the residue of an estate left to the grantor, to commence in possession after the determination of some particular estate granted out by him." *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A.2d 227, 234 (1943) (citing Blackstone, Vol. 2. § 176). A reversionary interest is used to define the interest that a person has in the reversion of property. *See* BLACK'S LAW DICTIONARY 1186 (5th Edition 1979). It is the right to "the future enjoyment of property, at present in the possession or occupation of another." *Id.*

*Buffalo Township v. Jones*, 571 Pa. 637, 645, 813 A.2d 659, 664 (2002), cert. denied, 540 U.S. 821, 124 S.Ct. 134, 157 L.Ed.2d 41 (2003) (footnote omitted). "While the terms 'possibility of reverter' and 'reversion' have been used interchangeably and confusedly, the courts of Pennsylvania have held, for over 100 years, that a possibility of reverter, like any other reversionary interest, is capable of transmission by inheritance, conveyance or release." *London v. Kingsley*, 368 Pa. 109, 81 A.2d 870 (1951); *see also, Lacy v. Montgomery*, 181 Pa.Super. 640, 124 A.2d 492, 494–495 (1956) ("This reversionary interest or possibility of reverter was subject to alienation by the grantor."). In short, a present interest in land (fee simple) and a future interest in land (possibility of reverter) are separate and distinct interests, each subject to alienation.

¶ 7 In this case, the trial court found, and the record reflects, that, on May 26, 1875, the Seners conveyed to the Railroad a fee simple determinable in a strip of land containing approximately two acres to be used for railroad purposes (the "Railroad

Strip"). Upon abandonment of the Railroad Strip by the Railroad, its successors and assigns, title in the Railroad Strip would revert to the Seners, their heirs and assigns. Trial Court Opinion, 9/5/07, at 4–5; Joint Exhibit A1.

¶ 8 On May 25, 1876, the Seners conveyed a fee simple interest in their property to George W. Smith through the words "do grant bargain sell alien enfeoff release and confirm unto the said G.W. Smith his heirs and assigns" ("Smith Deed"). Joint Exhibit A2. However, the Smith Deed contained an exception indicated by the words "Save and except." [3] *Id.* The "save and except" clause in the Smith Deed referred to the Railroad Strip and two other lots previously conveyed by the Seners through deeds dated May 31, 1874; it did not refer expressly or implicitly to the Seners' separate and distinct reversionary interest in the Railroad Strip. Hence, we conclude that the "save and except" clause was intended "to call attention to the outstanding interest of the [R]ailroad and to take this portion out of" the conveyance to George W. Smith. *Lacy,* 124 A.2d at 495. Consequently, it operated only upon the description of the land being conveyed to George W. Smith, withdrawing the Railroad Strip and two other properties from the conveyance without affecting the Seners' separate and distinct reversionary interest in the Railroad Strip. Hence, the trial court erred in deciding that the "save and except" clause applied to the Seners' reversionary interest.

¶ 9 Next, the Donald Herrs and Evankos argue that the Seners' reversion-

ary interest in the Railroad Strip passed to George W. Smith through the habendum clause in the Smith Deed, and then to the grantees of George W. Smith through similar habendum clauses in subsequent deeds.

¶ 10 In concluding that the Donald Herrs and Evankos did not acquire a reversionary interest in the Railroad Strip through George W. Smith, the trial court opined as follows:

Furthermore, given the language of the reverter clause and all subsequent deeds which state that the property descriptions begin or are bordered in a line 20 feet from the center line of the railroad right-of-way, and the save and except language in the deed to George W. Smith, it appears that all subsequent conveyances after the initial conveyance to the railroad did not include the railroad right-of-way as part of the properties conveyed out. Accordingly, claims which were being asserted by [the Donald Herrs and Evankos] had no basis in the recorded deeds into them or their predecessors in title concerning the property at issue.

The owners of the lots which front Millwood Road are not successors or assigns of the property subject to the right of reversion.

Trial Court Opinion, 9/5/07, at 5.

¶ 11 A habendum clause is "[t]he part of a deed that defines the extent of the interest being granted and any conditions affecting the grant." Black's Law Dictionary (7th Ed.) at 716; *see Ontelaunee Orchards v. Rothermel,* 139 Pa.Super. 44, 11 A.2d 543, 545 (1940) ("The purpose

---

**3.** An exception is "the with-holding from the operation of the deed something existent which otherwise the deed would pass to the grantee." *Lacy,* 124 A.2d at 496. Unlike a reservation which (1) limits what the grantee otherwise would take, (2) does not affect the description of the property conveyed, and (3) retains to the grantor some right upon the property, an exception operates upon the description and withdraws the excepted property from the description. *Id.*

of the habendum clause in a deed is to determine what estate passes."). This Court has held that, where a grantor uses the words *"Together with* all and singular the . . . reversions and remainders, . . . and also all the estate, right, title, interest, use, trust, property, possession, claim and demand whatsoever of the [grantor] in law or equity or otherwise," he parted with all of his interest, present and expectant, including any reversionary interest. *London,* 368 Pa. at 112, 81 A.2d at 871–872; *see also, Lacy,* 124 A.2d at 497 (discussing *London*), and *Douglas v. Kingsley,* 386 Pa. 59, 124 A.2d 107 (1956) (relying on *London* to resolve ejectment case brought by London's descendents).

¶ 12 Herein, the habendum clause in the Smith Deed contains the words, "Together with all and singular the . . . privileges hereditaments and appurtenances . . . and the reversions and remainders . . . thereof and all the estate rights title interest property claim and demand whatsoever of them, the said [Seners] . . . to have and to hold . . . the said . . . premises hereby granted . . . unto the said G.W. Smith his heirs and assigns. . . ." Joint Exhibit A2. Furthermore, the April 19, 1883 deed out of George W. Smith to Milton K. Sener, which created the eastern chain of title leading to the Donald Herrs and Evankos, and the January 22, 1888 deed out of George W. Smith's Executors to William D. Sprecher, which created the western chain of title leading to the Marvin Herrs, both contained a habendum clause with language identical to that in the Smith Deed.

¶ 13 Applying the above authority to the habendum clause in the Smith Deed, we conclude that the Seners effected "a comprehensive conveyance of [their] entire rights in the property, including any rights that might revert to [them] or [their] heirs" upon abandonment of the Railroad

Strip, to George W. Smith. *London,* 81 A.2d at 873. The Seners' "entire rights" included the reversionary interest in the Railroad Strip, but not the Railroad Strip itself, which they had conveyed to the Railroad. Similarly, applying the law to the deeds out of George W. Smith, we conclude that George W. Smith conveyed all of his property rights, including his reversionary interest in the Railroad Strip, through the western and eastern chains of title. Therefore, the trial court erred in concluding that "[t]here were no reversionary rights to this property ever conveyed to [the Donald Herrs and Evankos] or to any preceding parties in their chain of title." Trial Court Opinion, 9/5/07, at 3. As for language in the deeds out of George W. Smith that the property descriptions begin or are bordered on a line 20 feet east of the center line of the Railroad Strip, we conclude that such language did not concern George W. Smith's reversionary interest in the Railroad Strip. Rather, it called attention to the outstanding interest of the Railroad and took that property out of the conveyance to George W. Smith's grantees. *Lacy,* 124 A.2d at 495.

■ ¶ 14 Having determined that George W. Smith acquired and conveyed the reversionary interest in the Railroad Strip, we next consider whether the reversionary interest reached the Marvin Herrs, the Donald Herrs, and Evankos. Our review of the record indicates that a habendum clause appears in deeds of the Marvin Herrs' chain of title through the 1908 conveyance. *See* Joint Exhibits A1–A5. Similarly, a habendum clause appears in deeds of the Donald Herrs' chain of title through the 1913 conveyance and then again in the 1994 conveyance. *See* Joint Exhibits B1– B7, B10. A habendum clause also appears in deeds of Evankos' chain of title through the 1884 conveyance. *See* Joint Exhibits C1–C4. However, subsequent deeds lead-

ing into the Marvin Herrs, the Donald Herrs and Evankos do not include habendum clauses. Therefore, the question arises: what effect does the absence of a habendum clause have on the purported conveyance of the reversionary interest.

¶ 15 In 1909, the Pennsylvania Legislature enacted 21 P.S. § 3, **Grantor's entire estate and rights conveyed.** Pursuant to this statute:

> All deeds or instruments in writing for conveying or releasing land hereafter executed, granting or conveying lands, unless an exception or reservation be made therein, shall be construed to include all the estate, right, title, interest, property, claim, and demand whatsoever, of the grantor or grantors, in law, equity, or otherwise howsoever, of, in, and to the same, and every part thereof, together with all and singular the improvements, ways, waters, watercourses, rights, liberties, privileges, hereditaments, and appurtenances whatsoever thereto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues, and profits thereof.

21 P.S. § 3, amended 1925, April 30, P.L. 404, § 2. In effect, this statute operates as an implied habendum clause to determine what estate passes.

¶ 16 Applying Section 3 herein to the post–1909 deeds having no formal habendum clause, we conclude that the statute operates to convey the entire estate, including any reversionary interest. The post–1909 deeds do not appear to include any exception or reservation concerning the reversionary interest which would bar application of section 3. As a result, George W. Smith's reversionary interest in the Railroad Strip reached the Marvin Herrs *and* the Donald Herrs, and Evankos. The trial court erred in concluding otherwise.

¶ 17 Lastly, the Donald Herrs and Evankos argue that the Marvin Herrs do not have a greater interest in the Railroad Strip than they do. "It is well settled that a grant of land bounded by or abutting on a public highway is presumed to carry the fee to the center line of such highway or easement. A railroad is a highway within the meaning of this rule." *Fleck v. Universal–Cyclops Steel Corporation,* 397 Pa. 648, 651, 156 A.2d 832, 834 (1959) (citations omitted); *see also, Dellach,* 862 A.2d at 118 ("When a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way.").

¶ 18 As discussed above, the Seners conveyed their reversionary interest in the Railroad Strip to George W. Smith, and George W. Smith conveyed his reversionary interest in the Railroad Strip to predecessors-in-interest of the Marvin Herrs, the Donald Herrs, and Evankos. Upon abandonment of the Railroad Strip, title to the Railroad Strip reverted to the Seners, passed to their heirs and assigns, *i.e.,* George W. Smith, and then passed from George W. Smith through the western and eastern chains. The Marvin Herrs, the Donald Herrs, and Evankos each acquired a share of the reversionary interest in the Railroad Strip from their predecessors-in-interest. As owners of property abutting the Railroad Strip, they each became "owners in fee simple of the half of the [Railroad Strip] bordering their property" upon abandonment of the Railroad Strip. *Dellach,* 862 A.2d at 119. Thus, the Marvin Herrs did not have a greater interest in the Railroad Strip than the Donald Herrs and Evankos.

¶ 19 In light of the foregoing, the Marvin Herrs have no claim to that part of the Railroad Strip bordering the property of

the Donald Herrs and Evankos, who have rightfully been using that property as their own. Thus, the trial court erred in granting summary judgment in favor of the Marvin Herrs. Accordingly, we reverse the order granting summary judgment to the Marvin Herrs and denying summary judgment to the Donald Herrs and Evankos, and we remand to the trial court for the entry of summary judgment in favor of the Donald Herrs and Evankos.

¶ 20 Order reversed. Case remanded. Jurisdiction relinquished.