J-A31022-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DANIEL W. THOMPSON AND DOROTHY J. THOMPSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| GEORGE E. MACNAMARA, MAE B. MACNAMARA, STEVEN A. MACNAMARA, LORIE A. MACNAMARA, CHAD E. MACNAMARA, MACNAMARA LAND PARTNERSHIP, AND T.S. DUDLEY LAND COMPANY, INC. | |
| Appellants | No. 684 MDA 2015 |

Appeal from the Judgment Entered May 15, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 11-3612

\*\*\*\*\*

| | |
|---|---|
| DANIEL W. THOMPSON AND DOROTHY J. THOMPSON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| GEORGE E. MACNAMARA, MAE B. MACNAMARA, STEVEN A. MACNAMARA, LORIE A. MACNAMARA, CHAD E. MACNAMARA, MACNAMARA LAND PARTNERSHIP, AND T.S. DUDLEY LAND COMPANY, INC. | |
| Appellees | No. 741 MDA 2015 |

Appeal from the Judgment Entered May 15, 2015
In the Court of Common Pleas of Centre County
Civil Division at No(s): 11-3612

J-A31022-15

BEFORE:  PANELLA, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED DECEMBER 11, 2015**

Defendants George E. MacNamara, Mae B. MacNamara, Steven A. MacNamara, Lorie A. MacNamara, Chad E. MacNamara, MacNamara Land Partnership and T.S. Dudley Land Company, Inc., (collectively, the MacNamaras) appeal and Plaintiffs Daniel W. Thompson and Dorothy J. Thompson (h/w) (the Thompsons) cross-appeal from the judgment entered on the trial court's verdict in this quiet title case.  Because the Thompsons established prima facie title to the disputed tract of land, we affirm.

The underlying case involves 9 acres of vacant, sloped, tree-covered mountain land (disputed tract/tract) located in Boggs Township, Centre County.  Both parties claim title to the tract from a common grantor, the Johnson family.  In August 2011, the Thompsons instituted this action seeking to quiet title to the tract or, in the alternative, eject[1] the MacNamaras.  After a one-day non-jury trial, held on July 2, 2014, the parties submitted briefs to the court, which included proposed findings of fact and conclusions of law.  Ultimately, on February 10, 2015, the court

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Ejectment is an action filed by a party who does not possess the land but who has the legal right to possess it, against another party who has actual possession.  **Wells Fargo Bank, N.A. v. Long**, 934 A.2d 76 (Pa. Super. 2007).

- 2 -

found in favor of the Thompsons, entering a verdict, opinion and order concluding that the Thompsons are the lawful owners of the disputed tract and barring the MacNamaras from asserting any right, title, lien or interest to interfere with that ownership right. The trial court specifically found that a 1976 Agreement (Agreement) purporting to transfer the disputed tract to John Harnish, was "ambiguous as to the land that was to be conveyed" and that the "parties did not intend to include the Tract in the Agreement." Trial Court's Verdict, Opinion and Order, 2/10/15, at 8-9.

On February 20, 2015, the MacNamaras filed timely post-trial motions, which the court granted in part and denied in part. Specifically, the court granted the motion to the extent that it ordered the Thompsons to reimburse the MacNamaras for $829.29 in real estate taxes they had paid on the tract since 2005.[2] The remainder of the post-trial motions were denied. On May 15, 2015, the court entered judgment, in favor of the Thompsons, on its verdict. This timely appeal and cross-appeal follows.[3]

On appeal, the MacNamaras present the following issues for our consideration:

---

[2] The Thompsons acquired title to the disputed tract, by deed, in 2005.

[3] On June 15, 2015, this Court *sua sponte* consolidated this appeal and cross-appeal at 684 MDA 2015 and 741 MDA 2015. **See** Pa.R.A.P. 513 (consolidation of multiple appeals).

(1) Whether a Sales Agreement – executed by the sellers and clearly conveying properly identified and contemporaneously surveyed land – can be deemed ambiguous because the deed recital incorporated therein referenced an incorrect chain of title.

(2) Whether a conveyance through a Sales Agreement deemed to be ambiguous can be nullified by apparent unilateral mistake of the sellers concerning their own legal chain of title, without evidence of mutual mistake by the buyer.

(3) Whether a Sales Agreement executed in the names of four grantors doing business as a fictitious name can transfer the legal interest held by three of the grantors individually.

On cross-appeal, the MacNamaras present the following issue[4] for our review:

Whether the trial court erred in its order disposing of MacNamaras motion for post-trial relief when it directed Thompsons to reimburse MacNamaras for real estate taxes previously paid, a claim not presented by the pleadings or addressed at trial.

"[W]hen reviewing a decision in a quiet title action, we must determine whether the trial court's findings are supported by competent evidence." *Herr v. Herr*, 957 A.2d 1280, 1285 (Pa. Super. 2008). We will not reverse the trial court "in the absence of an error of law or a capricious disregard of evidence." *Montrenes v. Montrenes*, 513 A.2d 983, 984 (Pa. Super. 1986) (citations omitted).

---

[4] While the Thompsons list three additional issues in their cross-appeal brief, those issues are simply counter-statements to the issues raised by the MacNamaras on appeal. Therefore, we will confine our review to the one, preserved issue on cross-appeal stated above. *See* Plaintiff's Pa.R.A.P. 1925(b) Statement, 5/12/15.

The burden of proof in a quiet title action is upon the plaintiff. *Id.* In such an action, the plaintiff can recover only on the strength of his or her own title and not upon the weakness of the defendant's title. *Id.* (citing *Albert v. Lehigh Coal & Navigation Co.*, 246 A.2d 840, 843 (Pa. 1968)). In a quiet title action, once the plaintiff makes out a prima facie claim of title, the burden then shifts to the defendant to go forward with evidence to establish his own title to defeat the plaintiff's apparent ownership. *Golden v. Ross*, 39 A.2d 298, 302 (Pa. Super. 1944).

In their first two issues, the MacNamaras claim that the trial court erred in finding, as a matter of law, that the 1976 Agreement was ambiguous and that the parties did not intend, via the Agreement, to convey the disputed tract to John Harnish. Rather, they contend that the Agreement, which is in their chain of title, is the most senior recorded deed with regard to the tract and should control in the instant matter.[5]

_____

[5] When construing a deed:

> [A] court's primary object must be to ascertain and effectuate what the parties themselves intended. *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa. Super. 2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. *Id.* We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. *Id.* Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. *Id.* If a doubt arises concerning the interpretation of the instrument, it

*(Footnote Continued Next Page)*

On February 24, 1976, James R. Johnson, Clair W. Johnson and Lee Johnson, Jr., executed the Agreement that sold approximately 700 acres to John Harnish. The Agreement, which was recorded, transferred equitable ownership to Harnish in a private mortgage on the property. It is at this point that the MacNamaras claim the disputed tract came into their chain of title. Shortly thereafter, in June 1976, a formal survey (Rossi survey) depicted the disputed 9-acre tract as part of the MacNamara line. The Rossi survey was incorporated into a 1990 deed that conveyed the property from the 1976 Agreement to the MacNamaras.

Instantly, the trial court found that the Agreement incorporated by reference a 1962 deed which purportedly transferred land (including the disputed tract) to the Johnson family (James R., Clair and Lee, Jr.). Notably, that 1962 deed states that the land conveyed was "*the same premises which became vested in Alexander Franco and James R. Johnson*, two of the grantors herein[,[ *by deed dated March 7, 1960 from Anna A. McCoy et al*. [the McCoys.]" **See** Deed of Alexander Franco, et al. to Alexander Franco, et al. dated 4/27/62, Centre County Deed Book 262, page 247-49. While the

_____(Footnote Continued)_____

> will be resolved against the party who prepared it. **Id.** . . . To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed. **Id.**

**Consolidation Coal Co. v. White**, 875 A.2d 318, 326-27 (Pa. Super. 2005) (citations modified).

McCoys owned surrounding land in 1960, that land did not include the disputed tract. **See Wyskinski v. Mazzotta**, 472 A.2d 680, 683-84 (Pa. Super. 1984) (using earlier deeds in chain of title to determine exact nature and quantity of real estate interest conveyed). Rather, at that point in time the tract was actually owned by James R. Johnson, Clair W. Johnson, and Lee Johnson, Jr. **See** N.T. Non-Jury Trial, 7/2/14, at 63 (MacNamara's expert, Kerry Uhler, testified that prior to 1976 MacNamaras did not have valid title to disputed tract).

The record reveals that the disputed tract first came into the Thompson's chain of title in a 1916 deed as one of four parcels (purparts)[6] conveyed by Mary Barrett to her four children (the Barrett chain). **See** Defendant's Exhibit 1. Once the Thompsons offered evidence of their chain of title to the tract through the various deeds dating back to Mary Barrett in 1885, the burden then shifted to the MacNamaras to overcome the Thompson's apparent ownership. **Golden**, **supra**. Instantly, the MacNamaras did not present evidence of any deed that transferred title in the disputed tract to the McCoys, who were the first in line of the

_____

[6] A purpart is defined as "a share; a part in a division; that part of an estate, formerly held in common, which is by partition allotted to any one of the parties." **See** http://thelawdictionary.org/purpart. The trial court also quieted title to two other "purparts" of land in favor of the Thompsons. The MacNamaras have not disputed the ownership of those purparts. For purposes of this appeal, the disputed tract is also known as "Purpart No. 4" in the Thompson's chain of title.

MacNamara's chain of title. **See** Defendant's Exhibit 2, Chain of Title, MacNamara. Accordingly, the trial court concluded that the grantors in the 1976 Agreement were unable to transfer title to the disputed tract because they, themselves, did not have title to the property.

The trial court ultimately determined that the disputed tract that purportedly had been incorporated into the 1976 Agreement, through reference to the 1960 and 1962 deeds, had actually remained, at all times, within the Thompson's chain of title. We find that the trial court's determinations that the Thompsons undisputedly established prima facie title to the disputed tract and that the MacNamaras could not establish their own superior title to the tract are supported in the record. **Herr**, **supra**. Thus, we affirm[7] the trial court's judgment.[8]

On cross-appeal, the Thompsons claim that the trial court erred in ordering them to reimburse the MacNamaras for all taxes paid on the tract from 2005. Specifically, the Thompsons claim that because the issue was never raised prior to or at trial, the trial court did not have the authority to grant such relief.

_____

[7] Although we do not conclude that the agreement was necessarily ambiguous, we recognize that we may affirm the trial court on any correct basis. **Rambo v. Greene**, 906 A.2d 1232, 1235 n.4 (Pa. Super. 2006).

[8] Having determined that the disputed tract never came into the MacNamaras' chain of title via the 1976 Agreement, the final issue they raise on appeal concerning the ability of a fictitious partnership to transfer title is moot.

The MacNamaras first raised the tax issue in their motion for post-trial relief. Typically, issues not raised before the trial court, in pre-trial proceedings or at trial, are not preserved for appeal. Pa.R.C.P. 227.1(b)(1). However, this issue was not ripe until the court declared that the Thompsons were the rightful owners of the disputed tract and entered a verdict in their favor on the quiet title action. Therefore, the first time that the MacNamaras could timely raise the tax issue was post-verdict.

In any event, the Thompsons state in their cross-appeal brief that they "recognize that in the event the trial court's verdict is not reversed it would be equitable for them to reimburse the MacNamaras for the real estate taxes paid on the disputed tract." Cross-Appellants' Brief, at 22. Moreover, the Thompsons acknowledge that under such circumstances "they would withdraw their cross appeal from this portion of the trial court's Order." *Id.* Therefore, having affirmed the trial court's verdict in favor of the Thompsons in the underlying quiet title action, we consider this claim withdrawn.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/11/2015