Charles M. MACKALL, Jr., Appellee

v.

Robert L. FLEEGLE, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 25, 2002.

Filed June 6, 2002.

Michael S. Emerick, Duncansville, for appellant.

Dean A. Crabtree, Bedford, for appellee.

Before: HUDOCK, J., BOWES, J., and CERCONE, P.J.E.

CERCONE, P.J.E.

¶ 1 Appellant, Robert Fleegle, appeals from the Trial Court order dated September 6, 2001. After review, we affirm.

¶ 2 This matter arises out of a dispute over the ownership of a tract of land situated in Bedford County, Pennsylvania. The Trial Court summarized the facts of this case as follows.

The quiet title action before this Court was commenced on October 10, 2000 with the filing of [Mackall's] Complaint. At a non-jury trial on June 11, 2001, the parties presented testimony by stipulation. Each party was given thirty (30) days to submit briefs detailing their positions. All briefs were timely received.

According to the allegations, [Appellant] asserts a fee simple claim to a tract of land, formerly part of what [Mackall] [identifies] as the "Mackall Tract" and running through [Mackall's] property, by virtue of a quitclaim deed from Emeigh Colleries, Inc., a successor in interest of the former railroad [ ... ] [Mackall] avers that he is fee simple owner of the tract of land by way of reverter, pursuant to the railroad's lack of fee simple ownership and eventual abandonment of the tract of land for railroad purposes.

*FINDINGS OF FACT*

\* \* \* \* \* \*

The tract of land, upon which both parties are making a fee simple claim, is located in Bedford Township, Bedford County, Pennsylvania. The tract is fully described and set forth in Bedford County Deed Book Volume 280, Page 196, being the conveyance from Geraldine N. Stuckey to [Mackall] on or about June 30, 1965. No express exception and/or reservation is contained in [Mackall's] deed identifying the disputed tract of land.

[Appellant's] claim arises by virtue of a quitclaim deed executed by Emeigh Colleries, Inc. on or about November 7, 1985. The quitclaim deed was recorded in the Office of the Bedford County Recorder of Deeds [ ... ] Both parties stipulate that there are no defects in the chain of title, thus [Mackall] is the successor-in-interest to the large tract located in Bedford Township and [Appellant] is successor-in-interest to the

"Railroad Company's" strip of land that bisects the larger tract.

The "Railroad Company's" original interest in the disputed tract of land was created and recorded in Bedford County Deed Book B, No. 3, Page 526. The document reads as follows:

Know all men by these Presents, That the undersigned, owners of Real Estate of the County of Bedford in the State of Pennsylvania, for and in consideration of the benefits and advantages which will result to us from the location and construction of the Bedford and Bridgeport Railroad and in further consideration of the sum of One Dollar to us in hand paid by the Pittsburgh and Connellsville Railroad Company have bargained, sold, released and quitclaim unto the Pittsburgh & Connellsville Railroad Company, and their successors and assigns forever, for the use of the said Bedford & Bridgeport Railroad Company, a strip of land four rods in width, and such additional width as may be required and necessary in the construction, repair and use of a double track for said Bedford & Bridgeport Road extending in length as far as the Railroad may pass over our lands, together with such additional land on either or both sides of the aforesaid piece of land as may be required for the slopes of the cuts and embankments of said Road, together with the right-of-way over said tract of land belonging to us sufficient to enable said Company to conduct and carry water by aqueducts and pipe and the right to make proper drains. To have and to hold the same, together with the privileges aforesaid, to the Pittsburgh and Connellsville Railroad Company, their successors and assigns forever, for the purpose of the Railroad aforesaid, with all and singular the appurtenances thereunto belonging. And we do further covenant, agree and bind ourselves, by these presents, to execute a further deed of conveyance to Bedford & Bridgeport Railroad Company, fully describing said land hereby sold to them, whenever the same may be demanded by said Company, or their agent, after said road shall have been permanently located through our lands, and we do hereby release to the said Bedford and Bridgeport Railroad Company all claim for or right to damages which may accrue to us for or by reason of the appropriation and occupancy of the said land by said Company. The undersigned further agree that the said Bedford and Bridgeport Company shall have the privilege of removing from any of our lands adjacent said Road, any gravel, stone and other material that they may find necessary to the construction, repair and use of said Road, and also the right and privilege of casting earth upon and otherwise using so much of the land on both sides of the land hereby conveyed as may be necessary for the convenience of the said Company while the said Railroad is being constructed.

*See,* Deed Book B., No. 3, Page 526.

The "Railroad Company" continued to use the aforementioned tract of land for railroad purposes until the mid–1970's. From the time of the "Railroad Company's" cessation until the present, the tract of land has not been used for railroad purposes by any successor-in-interest.

Trial Court Opinion, dated 7/31/01, at 1–4. The Trial Court then rendered its verdict, finding in favor of Mackall and against Appellant. The Trial Court held that Mackall has a fee simple title in the disputed tract of land, and barred Appellant from

ever asserting any right to, or interest in, the land. Following the Trial Court's verdict on July 31, 2001, Appellant filed a motion to reconsider.[1] The Trial Court conducted a hearing on the motion on September 6, 2001, and the motion was denied. The Trial Court's order of September 6, 2001 does not direct the entry of judgment. Appellant's notice of appeal was timely filed on October 3, 2001.

¶ 3 A review of the docket entries and certified record reveals that, following the Trial Court's denial of post-trial motions, neither party praeciped for the entry of judgment in this matter; hence, judgment has not been entered. Directly on point regarding this issue is the case of *Fanning v. Davne*, 795 A.2d 388 (Pa.Super.2002). In that case, a jury returned a verdict against Fanning, who then filed post-trial motions. Fanning's post-trial motions were denied, and the trial court ordered the entry of judgment in favor of the appellee. Judgment, however, was not entered and Fanning filed his appeal. The *Fanning* Court then aptly analyzed the law applicable to this situation as follows:

'Generally, an appeal will only be permitted from a final order unless otherwise permitted by statute or rule of court.' *Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). An appeal from an order denying post-trial motions is interlocutory. *Id.;* Pa.R.A.P. 301(a), (c), and (d). An appeal to this Court can only lie from judgments entered subsequent to the trial court's disposition of post-verdict motions, not from the order denying post-trial motions. *Id.*

However, in *Bonavitacola v. Cluver*, 422 Pa.Super. 556, 619 A.2d 1363 (1993), a panel of this Court allowed an appeal to proceed, despite the fact that there was no judgment entered, in the interest of judicial economy. The reasoning behind this decision was that if the order from which an appeal is taken 'was clearly intended to be a final pronouncement on the matters discussed in the opinion [accompanying the order], . . . the appeal is properly before us and . . . we have jurisdiction to address the parties' claims.' *Bonavitacola, supra* . . . .

As our Court explained in *Bonavitacola*, '[t]he rationale behind treating this appeal as one from an entered judgment is to allow the appeal which is in progress to proceed, economizing judicial resources. Were we to quash an appeal from an order which, except for the entry of judgment, is otherwise final, we would expend judicial resources in the decision to quash, one of the parties would inevitably praecipe the prothonotary to enter judgment, and a subsequent appeal would be permitted to follow.' *Id.* at 1367 . . . .

Nevertheless, 'the law of this Commonwealth has long recognized that the entry of judgment is a jurisdictional matter. The requirement that judgment be docketed is jurisdictional. Moreover, the entry of judgment is a prerequisite to our exercise of jurisdiction. On the other hand there are some instances wherein a party has failed to enter judgment and our appellate courts may regard as done that which ought to have been done.' *Johnston, supra* at 514–515 . . . Pursuant to *Johnston, supra*, we will consider this appeal as being properly before our Court.

---

1. Despite being improperly styled as a motion to reconsider, upon review, it appears that Appellant's motion was actually a motion for post-trial relief, thus preserving the issues raised therein. *See* Pa.R.C.P. 227.1 (Post-trial relief). The post-trial motion seeking entry of judgment in favor of Appellant was timely filed on August 8, 2001.

*Fanning v. Davne,* 795 A.2d 388 (Pa.Super.2002) (certain citations omitted).

¶ 4 Therefore, although the appeal in the instant case following the denial of post-trial motions is interlocutory and subject to quashal, in the interests of judicial economy we will "regard as done that which ought to have been done." *See Fanning, supra.* We caution the parties against disregarding the procedural rules of this Commonwealth in the future.[2]

¶ 5 Appellant presents one issue for our review:

Whether the quitclaim transfer of real property from Charles Stuckey and Jacob Shartzer to the Bedford & Bridgeport Railroad Company constituted a fee simple transfer?

Appellant's Brief at 9.

■■■ ¶ 6 The parties stipulated at trial that the resolution of this matter rests upon the interpretation of the document drafted in 1870 that created the railroad's original interest in the strip of land. If the document conveyed a fee simple interest to the railroad then the strip of land belongs to Appellant as successor-in-interest to the railroad. If the document granted the railroad an easement, the land belongs to Mackall.

In interpreting such documents, the court's 'primary object must be to ascertain and effectuate what the parties intended.' [*Brookbank v. Benedum–Trees*

Oil Co., 389 Pa. 151, 131 A.2d 103, 107 (Pa.1957) ]. The traditional rules of construction to determine that intention are applicable in these circumstances, namely:

" ... (1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words ...; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning ...; (3) if a doubt arises concerning the interpretation of the instrument it will be resolved against the party who prepared it ...; (4) unless contrary to the plain meaning of the instrument, an interpretation given it by the parties themselves will be favored ...; (5) 'to ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed ...' "

*Id.* at 107[n. 6].

*Lawson v. Simonsen,* 490 Pa. 509, 417 A.2d 155, 158 (1980).

■■■ ¶ 7 Both parties and the Trial Court agree that this matter is controlled

---

**2.** We note that like the appellant in *Johnston the Florist v. TEDCO, supra,* in the instant case, Appellant was alerted via letter from the Central Legal Staff (CLS) of this Court on October 29, 2001, that judgment had not been entered in this matter. In *Johnston,* CLS notified Johnston that judgment had not been entered, and requested that he praecipe for the entry of judgment. Johnston did not respond and did not enter judgment despite being prompted to do so by CLS. In such a situation, the appropriate remedy would be quashal or dismissal. The instant case, how-

ever, is distinguishable from *Johnston.* In the instant case, CLS did not request that Appellant praecipe for the entry of judgment, it merely alerted Appellant that judgment had not been entered. Also unlike *Johnston,* Appellant did respond to the CLS letter. Appellant responded that the Trial Court's order of July 31, 2001 finding "for plaintiff and against defendant" constituted the entry of judgment. As discussed above, it did not. Pursuant to *Johnston* and *Fanning, supra,* in this case we regard as done that which ought to have been done.

by *Brookbank v. Benedum–Trees Oil Co.,* 389 Pa. 151, 131 A.2d 103 (1957) and its progeny *Lawson v. Simonsen, supra,* and *Quarry Office Park Associates v. Philadelphia Electric Co.,* 394 Pa.Super. 426, 576 A.2d 358 (1990). Both parties claim that these cases support their interpretation of the document. A review of these cases reveals that the documents construed therein are similar in nature to the document in the case *subjudice* in that all three involve grants of an interest in a strip of land to a railroad. In all three cases it was decided that the document granted an easement, or right-of-way, to the railroad, and not a fee simple interest. When compared with those three (3) documents it is clear that the document at issue in the case before us also granted an easement and not a fee simple interest.

¶ 8 The *Brookbank, Lawson,* and *Quarry* Courts considered many factors which, taken together, indicated that the grant of an easement was intended. First, the three (3) documents considered in those cases lacked a warranty of title clause. The *Lawson* Court found it "unlikely" and the *Brookbank* Court "inconceivable" that the railroad would not have required a warranty of title if it intended to receive a fee simple interest. We agree. The document in the instant case also lacks a warranty clause.

¶ 9 Another factor considered by the *Brookbank* and *Quarry* Courts was a clause which released the railroad from liability for damages resulting from the railroad's use of the land or the location, construction and operation of the railroad. In the instant case, the document releases the railroad from liability stemming from its "appropriation and occupancy" of the strip of land. As explained in *Quarry,* such a release indicated the conveyance of an easement, because "if a fee interest had been conveyed, the railroad would have a complete right to build and operate a railroad over the land" and no damages release would have been necessary. *Quarry, supra* at 363. In construing a similar clause, the *Brookbank* Court explained: "The only situation where any liability might accrue to the railroad from the location, construction and operation over this land would be in the event the railroad secured simply a 'right of way' over the land." *Brookbank, supra* at 110. Moreover, the release clause indicated that the railroad would be appropriating and occupying the land. Such language implies use, not ownership.

¶ 10 Another factor considered in *Brookbank* and *Quarry* was the recitation of specific rights granted to the railroad by the documents. The *Quarry* document granted the railroad the right to enter, use and occupy the land for "all the uses and purposes convenient or necessary for a Rail Road." *Quarry, supra* at 360. The *Brookbank* document granted the railroad the right to enter the land and to construct and operate a railroad. The railroad was also granted permission to take and use gravel and stones as needed from the surrounding land. The document in the instant case grants the railroad the "use" of a strip of land and such additional land as may be necessary for the "construction, repair and use" of a double railroad track as far as it may extend over "our lands." Also, similar to the *Brookbank* document, the instant document grants the railroad the right to take and use gravel or stone as necessary from the surrounding land. As the *Brookbank* Court noted:

> If the parties intended the railroad to receive a fee in this land, this language would give it those rights which it already had. If the parties intended to convey a fee simple interest to the railroad, it was surplusage to give the railroad these rights because such rights

would naturally belong to the railroad as holder of the fee.

*Brookbank, supra* at 110.[3]

¶ 11 Appellant directs our attention to the section of the document that provides: "And we do further covenant, agree and bind ourselves, by these presents, to execute a further deed of conveyance to [the railroad], fully describing said land hereby sold to them, whenever the same may be demanded by said Company, or their agent, after said road shall have been permanently located through our lands ...." Appellant argues that if an easement was intended, a further deed of conveyance would have been unnecessary. Mackall, however, *reminds us that no deed was conveyed or recorded, nor is there evidence that a deed was demanded by the railroad. Appellant concedes that no deed was ever conveyed. Appellant's Brief at 15. It is unknown whether the "further deed of conveyance" would have recited additional terms of consideration for the conveyance of a fee simple interest. Moreover, we cannot know whether it would have made clear that the original document granted an easement and the later document a fee simple, or whether the later document was simply a deed reaffirming an earlier grant of a fee simple interest. The clause merely refers to some action which might have occurred in the future, but did not. It does not aid us in our determination of the nature of the document at issue.

¶ 12 Construing the document as a whole, in its most basic form, it appears that the grantors intended to allow the railroad to use a strip of land of a certain width which would run over the grantors' land to construct and operate a railroad track. Allowance was made for the railroad to use additional land as necessary to fashion the cuts and embankments necessary to the construction of the track. In addition to the construction of the track, the railroad was also granted a right of way over the aforementioned strip of land belonging to the grantors to conduct and carry water via pipeline and aqueduct. The railroad was also granted permission to use or remove any gravel or stone it needed for its construction from the surrounding land. The railroad was released from all liability which may have accrued or would accrue to the grantors due to the railroad's use of the strip of land. Finally, the grantors agreed to execute a "further deed of conveyance" in the future, the terms of which are unspecified, to the railroad should the railroad demand that they do so. The document does not specify exactly which strip of land was to be used, nor does it specify that the grantors relinquished or sold to the railroad their interest in or title to a specific strip of land. Accordingly, we hold that the Trial Court correctly found that the document granted the railroad an easement and not a fee simple interest in an unspecified strip of land 66 feet wide upon which the railroad constructed a length of track.

¶ 13 Order affirmed.

---

3. Another factor that the *Lawson* Court considered was the amount of consideration paid. Our Supreme Court explained: "The land in question apparently extends 33,415 feet and is 66 feet wide. Surely even in 1881 the sum of $1.00 was insufficient to convey a fee interest in a strip of farm land 66 feet wide and 6 miles long." *Lawson, supra* at 159. In the case *sub judice*, the strip of land is also 66 feet wide (four rods), but the length is not known. Therefore, as in *Brookbank*, we are unable to determine whether the consideration was adequate. *See Brookbank, supra* at 108; *Lawson, supra* at 158–59.