J-A13002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MALKAN, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOSEPH SOFTA, MARK SOFTA, DAVID SOFTA, TAB SOFTA, MICKEY SOFTA, ARLEEN SOFTA, BERNARD SOFTA, JAMES SOFTA AND FRANCES SOFTA | |
| Appellees | No. 1435 WDA 2014 |

Appeal from the Order August 5, 2014
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 1052 OF 2006, G.D.

BEFORE:  PANELLA, J., SHOGAN, J., and OTT, J.

MEMORANDUM BY PANELLA, J.                    **FILED JULY 27, 2015**

Appellant, Malkan, Inc., appeals from the order denying Malkan's request for a preliminary injunction and granting summary judgment to Appellees, Joseph Softa, Mark Softa, David Softa, Tab Softa, Mickey Softa, Arleen Softa, Bernard Softa, James Softa and Frances Softa ("the Softas"), on the Softas' counterclaim in ejectment. Malkan contends that the trial court erred in concluding that Malkan does not possess fee simple title to the property in dispute. We affirm.

In his amended complaint in equity, Malkan asserts ownership of a parcel of land formerly known as the Redstone Branch of the Pennsylvania Railroad ("the property"). Malkan acquired the property from Penn Central Properties, Inc. and the Penn Central Corporation in 1993. In the chain of

title of both parties is an instrument entitled "Right of Way Contract" from William Hormell, predecessor in title to the Softas, to the Redstone Coal Association, predecessor in title to Malkan, dated June 11, 1875, and recorded in the Office of the Recorder of Deeds, Fayette County. This contract "released" a "Right of Way … for the construction and maintenance of a Railway." Right Of Way Contract, Deed Book 45 Page 17, R.R. at 99a ("R.R. at 99a").

In May 2005, Malkan became aware that the Softas installed a locked gate blocking ingress and egress to the property. Malkan requested a key for access, but the Softas refused.

On October 30, 2006, Malkan filed its amended complaint in equity seeking to permanently enjoin the Softas from barricading the property and allowing him access. The Softas filed a counterclaim in ejectment alleging that Malkan no longer had any interest, right, or title in the property.

Both parties moved for summary judgment. After the submission of briefs, the trial court entered an order, concluding that the Softas were entitled to summary judgment as the owners in fee simple to the disputed premises, thus rejecting Malkan's claim that the contract conveyed a title in fee simple rather than simply a railroad right-of-way. This timely appeal followed.

As both parties stipulated to the trial court that the only question before it was a pure question of law, we will review it as such. Our review of

pure questions of law is de novo. *See Majorsky v. Douglas*, 58 A.3d 1250, 1257 (Pa. Super. 2002).

Malkan argues that the trial court erred in finding that the "Right of Way" contract conveyed only a railroad right-of-way. We disagree.

In interpreting instruments of conveyance, our "primary object must be to ascertain and effectuate what the parties intended." *Mackall v. Fleegle*, 801 A.2d 577, 581 (Pa. Super. 2002) (citing *Brookbank v. Benedum-Trees Oil Company*, 131 A.2d 103, 107 (1957)). In determining the parties' intent, we rely on the traditional rules of interpretation:

> (1) the nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words…; (2) effect must be given to *all* the language of the instrument and no part shall be rejected if it can be given a meaning…; (3) if a doubt arises concerning the interpretation of the instrument it will be resolved against the party who prepared it…; (4) unless contrary to the plain meaning of the instrument, an interpretation given it by the parties themselves will be favored…; (5) "to ascertain the intention of the parties, the language of the deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed"

*Mackall*, 801 A.2d at 581 (citations omitted).

The *Brookbank* line of cases set forth the factors to consider in determining whether a grant of an easement or right of way to the railroad was intended rather than a fee simple transfer. *See Mackall*, 801 A.2d 577. One factor is the lack of a warranty of title clause. Courts have found it

- 3 -

"unlikely", *Lawson v. Simonsen*, 417 A.2d 155, 159 (Pa. 1980), and "inconceivable", *Brookbank*, 131 A.2d at 110, that the railroad would not have required a warranty of title if it intended to receive a fee simple interest. *Mackall*, 801 A.2d at 582. We are bound by these decisions. Here, the right-of-way document does not contain a warranty of title clause.

Another factor to be considered is the presence of a clause releasing the railroad from liability for damages resulting from the railroad's use of the land or the location, construction and operation of the railroad. *See id*. Such a release indicates the conveyance of an easement, because

> if a fee interest had been conveyed, the railroad would have a complete right to build and operate a railroad over the land and no damages release would be necessary … [A] release clause indicated that the railroad would be appropriating and occupying the land. Such language implies use, not ownership.

*Id*. (internal quotation marks omitted).

Here, the document states, "I do hereby *release* to the Red Stone Coal Association *free and clear of all further claims or compensation for damages*, a Right-of-Way fifty feet wide…" R.R. at 99a. Such a release would be unnecessary and incongruous with the acquisition of a fee simple interest in the property.

Another factor to be considered is the recitation of specific rights granted to the railroad by the documents. *See Mackall*, 801 A.2d at 582. The document in this case grants the railroad "a *Right-of-Way* fifty feet wide, with such additional width at deep cuttings or embankments as may be

- 4 -

required for the construction and maintenance of a Railway through *my* piece or parcel of land ... " R.R. at 99a (emphasis added). Analogous to the **Brookbank** series of cases, if the parties intended the railroad to receive a fee simple interest in this land, this language would be surplusage because such rights would naturally belong to the railroad as holder of the fee. **See Mackall**, 801 A.2d at 582-583. We therefore conclude that the trial court did not err in determining that the document granted a right-of-way and not a fee simple title.

Malkan directs our attention to the section of the document that provides: "And further agree to execute a good and sufficient deed for the same clear of all encumbrances, as soon as the exact amount of land is determined and surveyed by the said, Red Stone Coal Association, or their assigns." R.R. at 99a. However, similar to the agreement in **Mackall**, no deed was conveyed or recorded. **See** 801 A.2d at 583. The referenced clause merely refers to some action which might have occurred in the future. But it did not.

Malkan further contends that the trial court erred in failing to find that the document passed title by the doctrine of equitable conversion. He correctly contends that it is well established in Pennsylvania that when an unconditional agreement for the sale of land is signed, the purchaser becomes the equitable and beneficial owner through the doctrine of equitable conversion. **See Byrne v. Kanig**, 332 A.2d 472, 474 (Pa. Super.

1974). However, the "Right of Way Contract" at issue was not an unconditional agreement for the sale of land.

The language of the document in this case clearly and unambiguously conveys only a right-of-way to a Pennsylvania corporation for the sole use as a railway. The document gave the Red Stone Coal Association the right to transfer the right-of-way to "any other organization incorporated by the laws of this Commonwealth *to build a railroad* along the waters of the Red Stone Creek." R.R. at 99a (emphasis added). The language is clear and unambiguous that any conveyance of the right-of-way must be made to a Pennsylvania corporation for the sole purpose of building a railroad. Thus any conveyance to a non-corporate entity or to a corporation not incorporated under Pennsylvania law is void *ab initio*, as is any conveyance made to an entity which did not intend to operate a railroad on the property.

Malkan argues that the abandonment of the railroad is a question of fact that the trial court improperly determined. However, Malkan himself asserted in his motion for summary judgment that the "sole issue is a question of law concerning whether [Appellant] possesses title in fee to the disputed area of property." Trial Court Opinion, filed 8/6/14, at 3. There is no question that the railroad tracks have been removed and Malkan has not used the property as a railroad in the two decades it has owned the property. **See** Stipulations*,* filed 6/24/14, at ¶¶ 13-14. Therefore the trial

court did not err in finding that the railroad tracks have been removed and the railroad has been abandoned.

"When a railroad abandons an easement, the right-of-way is extinguished and the land is owned in fee simple by the owner or owners of the land on either side of the right-of-way." *Dellach v. DeNinno*, 862 A.2d 117, 118 (Pa. Super. 2004). The property interest in the right of way has thus not been preserved and Malkan has no right to access said property.

We conclude that the trial court did not err in concluding that Malkan does not own the premises in fee nor does he have equitable title to the same. The Softas are the owners in fee simple to the former easement after extinguishment of the right-of-way by abandonment.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2015

- 7 -