J-A26044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| THE MT. MORRIS SPORTSMEN'S ASSOCIATION | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| A. WILLIAM BOYERS, BARBARA E. STROSNIDER AND RUTH A. HAINES, | : : : | |
| Appellants | : | No. 506 WDA 2016 |

Appeal from the Order March 28, 2016[1]
in the Court of Common Pleas of Greene County,
Civil Division, No(s):  A.D. 650 of 2014

BEFORE:  BENDER, P.J.E., RANSOM and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 22, 2016**

A. William Boyers, Barbara E. Strosnider and Ruth A. Haines (collectively, "Defendants") appeal from the Order granting summary judgment against them and in favor of The Mt. Morris Sportsmen's Association ("the Association") in this action to quiet title to surface, oil and gas rights as to a 101.5-acre tract of land in Perry Township, Greene

---

[1] We observe that on March 29, 2016, the trial court entered an Order resolving the claims of the parties, and stating that the Order would be made final upon the entry of a praecipe to enter judgment.  Defendants filed a Praecipe that same date, but judgment was not entered on the docket.  As the Praecipe rendered the March 29, 2016 Order final, we will address the merits of the claims raised.

County, Pennsylvania ("the Property").[2]  We reverse and remand with instructions.

Clara Boyers (the wife of William F. Boyers), James C. Mason, Cora B. Fox, William H. Mason and Sarah Mason (collectively, "the Mason Heirs") each inherited an equal share of the Property upon the death of their mother.  In 1924, the Mason Heirs recorded a deed ("the 1924 Deed") conveying certain interests in the Property to William H. Mason and Sarah Mason.  Thereafter, William H. Mason recorded a deed conveying certain interests in the Property to William F. Boyers and Clara Boyers (collectively, "the Boyerses").

As the trial court summarized in its Opinion,

[t]he Association and [] Defendants claim title [of the right to oil and gas underlying the Property] through a common source, William F. Boyers.  [] Defendants assert that William F. Boyers severed and retained to himself the oil and gas rights underlying the [P]roperty through [a deed dated May 9, 1947 ("the 1947 Deed")].  The Association contends that those rights were transferred through the 1947 [D]eed [to John B. and Mary L. Maxon, husband and wife (collectively, "the Maxons")], who, in turn[,] conveyed all of their rights to [the Association].

On July 10th, 201[4], the President of [the Association], Donley McCormick ["McCormick"], conveyed all the [Association's] right, title, and interest in and to the oil and gas

_____

[2] We note that "Pennsylvania recognizes three discrete estates in land:  the surface estate, the mineral [or subsurface] estate, and the right to subjacent (surface) support.  Because these estates are severable, different owners may hold title to separate and distinct estates in the same land." *Pennsylvania Servs. Corp. v. Texas E. Transmission, LP*, 98 A.3d 624, 629 (Pa. Super. 2014) (citations omitted).

rights underlying the [Property, by means of a quit claim deed, ("the Quit Claim Deed")] to [Defendants].

Trial Court Opinion, 2/18/16, at 1-2.

In October 2014, the Association commenced the instant action against Defendants to quiet title to the right to oil and gas underlying the Property, and to void the Quit Claim Deed. Defendants filed an Answer and a Counterclaim to quiet title to the same right to oil and gas underlying the Property. At the close of discovery, the Association filed a Motion for Summary Judgment, arguing that the Quit Claim Deed from McCormick to Defendants was void, as he lacked authority to convey the Association's interest in the Property. Consequently, the Association claimed that it owned the surface of the Property, and an undivided 3/5 interest in the right to oil and gas underlying the Property.

Defendants filed a Reply to the Association's Motion, and a Counter-Motion for Summary Judgment. By their Counter-Motion, Defendants argued that they own an undivided 2/5 interest in the right to oil and gas underlying the Property, and a 9/10 interest in the Property's surface. Defendants further argued that James C. Mason owns an undivided 1/20 fractional interest in the surface of the Property, and in the right to oil and gas underlying the Property. Finally, Defendants argued that the heirs of Cora B. Fox own an undivided 1/20 interest in the surface of the Property, and in the right to oil and gas underlying the Property.

After oral argument, the trial court entered an Order and Opinion declaring the Quit Claim deed null and void, granting the Association's Motion for Summary Judgment, and dismissing Defendants' Counterclaim. Trial Court Order, 2/18/16. The trial court found that because McCormick lacked the authority to convey the Association's oil and gas rights, the Quit Claim deed is void. Trial Court Opinion, 2/18/16, at 2-3 (unnumbered). Consequently, the Association retained ownership of the surface of the Property, and an undivided 3/5 interest in the right to oil and gas underlying the Property. *Id.* at 3 (unnumbered).

Ultimately, on March 29, 2016, the trial court entered an Order granting the Association's Motion for Summary Judgment and dismissing Defendants' Counter-Motion for Summary Judgment and Counterclaim, and stating that the Order would be made final upon entry of a Praecipe for final judgment. Trial Court Order, 3/28/16. On March 28, 2016, the Association filed a Praecipe to enter judgment. Thereafter, Defendants filed the instant appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Defendants present the following claims for our review:

1. Whether the trial court erred by dismissing Defendants' Counterclaim and granting [the Association's M]otion for summary judgment[,] and improperly interpreting the deeds in the chain of title to 101.5 acres of oil and gas rights underlying [the Property] … and holding that [the Association] owns three-fifths (3/5) of the oil and gas and Defendants have no ownership in said oil and gas rights[?]

2. Whether the trial court erred by failing to consider the interest of Sarah Mason, which would have passed under intestacy laws to all of her four siblings and not just to her brother, William Mason[?]

3. Whether the trial court erred by failing to properly interpret the 1947 deed from William [F.] Boyers to [the Maxons] whereby the Maxons received all of the surface and three-fifths (3/5) of the oil and gas[,] instead of nine-tenths (9/10) of the surface and one-tenth (1/10) of the oil and gas[?]

Brief for Appellants at 5-6. As all of Defendants' claims implicate the interpretation of deeds in their chain of title, we will address the claims together.

Our scope of review of an order granting summary judgment is plenary. ***Gilbert v. Synagro Cent., LLC***, 131 A.3d 1, 10 (Pa. 2015).

Our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or clearly abused its discretion. Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment.

***Id.*** (internal citation omitted).

In their first claim, Defendants argue that the trial court improperly granted summary judgment in favor of the Association where the 1947 Deed (in their chain of title) excepted and reserved to William F. Boyers[3] an

---

[3] Defendants are the grandchildren of William F. Boyers.

undivided 2/5 interest in the right to oil and gas underlying the Property. Brief for Appellants at 17, 19. Defendants argue that if William F. Boyers had intended to reserve the same 2/5 interest in the right to oil and gas previously reserved by James C. Mason and Cora B. Fox in a 1934 deed ("the 1934 Deed"), he would have referred to that deed in his own exception and reservation. *Id.* at 20.

In their second claim, Defendants assert that the trial court erred by failing to consider Sarah Mason's interest in the Property, "which would have passed under intestacy laws to all of her four siblings and not just to her brother, William [H.] Mason." *Id.* at 21. Defendants argue that upon Sarah Mason's death, William H. Mason owned an undivided 17/20 interest in the surface, and 1/4 interest in the right to oil and gas underlying the Property. *Id.* at 22. According to Defendants, William H. Mason thereafter conveyed his interest in the Property to the Boyerses by means of the 1934 Deed.

In their third claim, Defendants challenge the trial court's interpretation of the 1947 Deed from William F. Boyers to the Maxons. *Id.* at 25. Defendants argue that the 1947 Deed reserved to William F. Boyers his interest in the right to oil and gas underlying the Property, which subsequently passed to Defendants. *Id.*

Defendants' claims require us to construe the deeds in their chain of title to the Property. When construing a deed,

> a court's primary object must be to ascertain and effectuate what the parties themselves intended. *Mackall v. Fleegle*,

2002 PA Super 178, 801 A.2d 577, 581 (Pa.Super. 2002). The traditional rules of construction to determine that intention involve the following principles. First, the nature and quantity of the interest conveyed must be ascertained from the deed itself and cannot be orally shown in the absence of fraud, accident or mistake. [] We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. [] Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. [] If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. [] ... To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Consolidation Coal Co. v. White*, 875 A.2d 318, 326-27 (Pa. Super. 2005).

[W]here there is any doubt or ambiguity as to the meaning of the covenants in a contract or the terms of a grant, they should receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made. It is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement.

*In re Estate of Quick*, 905 A.2d 471, 474-75 (Pa. 2006) (citation and internal quotation marks omitted).

Our review of the record discloses that, prior to 1924, the Property was owned by the Mason Heirs.[4] By the 1924 Deed, Clara Boyers and her

---

[4] The Mason Heirs acquired title through their parents, Joshua and Mary Mason.

husband, William F. Boyers, James C. Mason and his wife, Fannie Mason, and Cora B. Fox and her husband, Chas W. Fox (collectively, "the Mason Grantors"), conveyed their interests in the surface of the Property to William H. Mason and his sister, Sarah Mason (collectively, "the Mason Grantees"), "**to hold as joint tenants and not as tenants in common**."[5] 1924 Deed at 1 (emphasis added). The Mason Grantees each continued to own an undivided 1/5 interest in the surface of the Property, which they inherited from their mother. The 1924 Deed, *inter alia*, included the following exception and reservation of oil and gas rights:

> Also excepting and reserving to the [Mason Grantors], their heirs and assigns, the [*sic*] three fifths (3/5) of all the oil and gas in and underlying above described tract of land together with the right to mine and operate for oil and gas and to lay pipe lines, to build tanks, stations and structures thereon and to take care of said products: the free use of sufficient water from the premises to run all necessary machinery and the right to remove at any time all machinery and fixtures placed on said premises by the said parties of the first part, their heirs and assigns for the purpose of operating oil and gas.

1924 Deed at 2-3. As a result of the 1924 Deed, no Mason Grantor retained an interest in the surface of the Property.

---

[5] In a joint tenancy, each party holds an undivided share of the whole estate. **General Credit Co. v. Cleck**, 609 A.2d 553, 556 (Pa. 1992). Upon severance of the joint tenancy (by, for example, voluntary alienation), the realty becomes a tenancy in common. **Id.** "[A] joint tenancy with right of survivorship is severable by the action, voluntary or involuntary, of either of the parties." **Estate of Quick**, 905 A.2d at 475.

In determining whether the 1924 Deed created a joint tenancy with right of survivorship as to the undivided 3/5 surface interest conveyed to the Mason Grantees, we are cognizant that,

> [a]t common law, the doctrine of survivorship was a recognized incident to a joint estate. The American doctrine, on the other hand, holds the creation of joint estates in disfavor and instead presumes that tenants hold as tenants in common, without the right of survivorship. This doctrine found expression in the legislature's enactment of Acts 1812, March 31, P.L. 259, 5 Sm.L. 395, § 1, which was later expressly saved from repeal by Acts 1972, June 30, P.L. 508, no. 164, § 3(b), effective July 1, 1972, and transferred to 68 P.S. § 110 in 1974.
>
> …
>
> Notwithstanding the legislative presumption against the right of survivorship in joint tenancies, the doctrine of survivorship has not been wholly abolished. This incident may still exist **when expressly provided for by deed** or will or when it arises by necessary implication.

*Riccelli v. Forcinito*, 595 A.2d 1322, 1326 (Pa. Super. 1991) (citations omitted, emphasis added). When two or more persons hold property as joint tenants with the right of survivorship, title to that property vests equally in those persons during their lifetimes, with sole ownership passing to the survivor at the death of the other joint tenant. *Estate of Quick*, 905 A.2d at 474.

Here, the 1924 Deed expressly stated that the Mason Grantees would hold title to the conveyed 3/5 surface interest as "joint tenants and not as tenants in common." 1924 Deed at 1. As a result, the 1924 Deed expressly created a joint tenancy between the Mason Grantees as to the undivided 3/5

- 9 -

surface interest conveyed by the 1924 Deed. **See Riccelli**, 595 A.2d at 1326. Each Mason Grantee held an additional, undivided 1/5 interest in the surface of the Property, as tenants in common.

Our review further discloses that the 1924 Deed conveyed no oil and gas rights to the Mason Grantees. Prior to the 1924 Deed, each of the five Mason Heirs owned an undivided 1/5 share of the right to oil and gas underlying the Property. In the 1924 Deed, the Mason Grantors expressly excepted and reserved from the conveyance their 3/5 interest in the right to oil and gas underlying the Property. 1924 Deed at 2. As each Mason Grantee already owned an undivided 1/5 interest, as tenants in common with the Mason Grantors,[6] no oil and gas interests were conveyed by means of the 1924 Deed.

Sarah Mason died intestate and without issue on May 11, 1933. Upon her death, her jointly held 3/5 interest in the surface of the Property vested in William H. Mason. **See Estate of Quick**, 905 A.2d at 474. As Sarah Mason died intestate, the original interests inherited from her mother, *i.e.*, her undivided 1/5 interest in the surface and the right to gas and oil underlying the surface of the Property, passed to her siblings by intestate succession. Consequently, upon Sarah Mason's death, Clara Boyers, James C. Mason and Cora B. Fox each owned (a) an undivided 1/20 share in the

---

[6] The essence of a joint tenancy with the right of survivorship is the four unities: interest, title, time, and possession. **Estate of Quick**, 905 A.2d at 474). The record reflects no deed creating a joint tenancy as to the undivided oil interests held by the Mason Heirs.

surface of the Property, and (b) an undivided 1/4 share of the right to oil and gas underlying the Property. William H. Mason owned an undivided 17/20 interest in the surface of the Property (a 3/5 interest through the 1924 Deed, his original 1/5 interest, and the 1/20 interest inherited from Sarah Mason), and an undivided 1/4 interest in the right to oil and gas underlying the Property.

The record reflects that in 1934, William H. Mason executed the 1934 Deed, transferring his interests in the Property to the Boyerses. The 1934 Deed included the following exception and reservation of rights by William H. Mason:

> Also excepting and reserving **as recited in the previous deed of [the Mason Grantors,] dated September 27, 1924, the three-fifths (3/5) of all the oil and gas in and underlying the above described tract of land** together with the right to operate for oil and gas and to lay pipe lines, to build tanks, stations and structures thereon to take care of said products, the free use of sufficient water from the premises to run all necessary machinery and the right to remove at any time all machinery and fixtures placed on said premises in keeping with said exceptions and reservations.

1934 Deed at 1 (emphasis added). By its language, the 1934 Deed conveyed William H. Mason's 17/20 interest in the surface of the Property to the Boyerses. When combined with Clara Boyers's 1/20 interest in the surface (inherited from Sarah Mason), the Boyerses owned an undivided 9/10 interest in the surface of the Property.[7]

---

[7] James C. Mason and Cora B. Fox each continued to own an undivided 1/20 interest in the surface of the Property, inherited from Sarah Mason.

At the time of the 1934 Deed, William H. Mason owned an undivided 1/4 interest in the right to oil and gas underlying the Property.  The 1934 Deed expressly excepted and reserved the 3/5 oil and gas interests originally excepted and reserved by the Mason Grantors in the 1924 Deed. The 1934 Deed did not except or reserve any additional oil and gas interests owned by William H. Mason.  As a result, William H. Mason conveyed his undivided 1/4 interest in the right to oil and gas underlying the Property to the Boyerses.  When combined with the 1/5 interest Clara Boyers previously had excepted and reserved in the 1924 Deed, plus her 1/20 interest in the right to oil and gas inherited from Sarah Mason, the Boyerses owned, in total, an undivided 1/2 interest in the right to oil and gas underlying the Property.

In 1947, William F. Boyers[8] conveyed his interest in the Property to the Maxons.  1947 Deed at 1.  The 1947 Deed included the following exception and reservation of rights:

> EXCEPTING AND RESERVING **all the undivided two-fifths interest in all the oil and gas rights**, together with all other minerals, in and underlying the [Property].

> The title to the above described tract of land being in William H. Mason partly by descent from his father, Joshua Mason, and partly by conveyance from the heirs of the said Joshua M. Mason, his brothers and sisters.

---

[8] Clara Boyers died prior to the execution of the 1947 Deed, leaving her estate to her husband, William F. Boyers.  The Defendants claim title through William F. Boyers (their grandfather) and Albert A. Boyers (their father).

> BEING the same tract of land conveyed by William H. Mason, Single, to William F. Boyers, by deed dated March 5, 1947 ….

*Id.* (emphasis added). Unlike prior conveyances, the 1947 Deed included no language referring to the exception and reservation of oil and gas rights set forth in the 1924 Deed (an undivided 3/5 interest), or any prior deed. Further, the 2/5 figure did not correspond to interests previously excepted or reserved.

At the time he executed the 1947 Deed, William F. Boyers owned an undivided 9/10 interest in the surface of the Property, and an undivided 1/2 interest in the right to oil and gas underlying the Property. He excepted and reserved "all the undivided two-fifths interest in all the oil and gas rights … in and underlying the [Property.]" *Id.* As a result, the 1947 Deed expressly and unambiguously conveyed to the Maxons an undivided 9/10 interest in the surface of the Property, and a 1/10 interest in the right to oil and gas underlying the Property. William F. Boyers retained ownership of an undivided 2/5 interest in the right to oil and gas underlying the Property.

In a deed recorded on February 11, 1957 ("the 1957 Deed"), the Maxons conveyed their interest in the Property to the Association. The 1957 Deed included the following language:

> ALSO EXCEPTING AND RESERVING all the undivided **two-fifths interest in all the oil and gas rights**, together with all other minerals in and underlying the [Property].
>
> BEING the same tract of land conveyed by William H. Mason, Single, to William F. Boyer, by deed dated March 5, 1947 ….

1957 Deed at 2 (emphasis added).

The Maxons did not own an undivided 2/5 interest "in all the oil and gas rights." Rather, they owned a 1/10 interest in the right to oil and gas underlying the Property. However, an undivided 2/5 of "all the oil and gas rights" had been excepted and reserved by William F. Boyers in the 1947 Deed. Because the Maxons owned less than 2/5 of all oil and gas rights, we conclude that the exception and reservation set forth in the 1957 Deed clearly refers to the 2/5 interest excepted and reserved by William F. Boyers in the 1957 Deed. No other interpretation gives effect to the language of the 1957 Deed.

Therefore, by the 1957 Deed, the Maxons conveyed to the Association their undivided 9/10 interest in the surface of the Property, and an undivided 1/10 interest in the right to oil and gas underlying the Property. William F. Boyers continued to own the undivided 2/5 interest in all rights to oil and gas underlying the Property, which he had previously excepted and reserved in the 1947 Deed.

On July 10, 2014, McCormick, as President of the Association, executed the Quit Claim Deed, purportedly conveying to Boyers, Strosnider and Haines, as tenants in common,

> ALL [the Association's] right, title, and interest in and to the oil and gas rights within and underlying all [the Property] situate in Perry Township, Greene County, Pennsylvania ….
>
> …

- 14 -

> BEING the same tract of land conveyed to [the Association], by Deed of John B. Maxon and Mary L. Maxon, dated January 15, 1957 and recorded March 1, 1957 in the Office of the Recorder of Deeds for Greene County, Pennsylvania in Deed Book [Vol.] 492, Page 285.
>
> The purpose of this quitclaim deed is to relinquish any possible oil, gas and mineral interests held by Grantor in said property to [the Association] and is therefore exempt from transfer tax.

Quit Claim Deed at 1-2.

"[A] quit-claim deed is one which purports to convey, and is understood to convey, nothing more than the interest or estate of which the grantor is seised or possessed, if any, at the time." ***Stewart v. Chernicky***, 266 A.2d 259, 267 (Pa. 1970) (citation and quotation marks omitted). In its Opinion, the trial court addressed the validity of the Quit Claim Deed as follows:

> Where a deed was given on behalf of the corporation, in the absence of requisite approval under the corporation's organization documents, the transaction is void and the land must be reconveyed. ***Scientific Living, Inc. v. Hohensee***, 270 A.2d 216, 220-221 (Pa. 1970). Upon review of the oral arguments, Association Bylaws Section 5(d) and 15 Pa.C.S.A. § 5506(a)[,] ... the [Quit Claim Deed] is not binding against the Association because it lacks proper approval by the Association's board of directors and members. We therefore cancel the deed and declare it null and void.

Trial Court Opinion, 2/18/16, at 2-3 (unnumbered). We agree with and adopt the trial court's reasoning and conclusion, with regard to the validity of the Quit Claim Deed.

Because the Quit Claim Deed is void, the Association continued to own an undivided 9/10 interest in the surface of the Property, and a 1/10 interest in the right to oil and gas underlying the Property. Defendants, as William F. Boyers's heirs, own an undivided 2/5 interest in the oil and gas underlying the Property, which he had reserved and excepted in the 1947 Deed.[9]

Accordingly, the trial court erred as a matter of law when it granted the Association's Motion for Summary Judgment, denied Defendants' Counter-Motion for Summary Judgment, and dismissed Defendants' Counterclaim. We therefore reverse the Order of the trial court. We remand for entry of an Order granting, in part, Defendants' Motion for Summary Judgment, and quieting title to (a) Defendants' undivided 2/5 interest in the right to oil and gas underlying the Property; (b) James C. Mason's (or his heirs') undivided 1/20 interest in the surface of the Property; (c) Cora Mason Fox's (or her heirs') undivided 1/20 interest in the surface of the Property; (d) the Association's undivided 9/10 interest in the surface of the Property, and (e) the Association's undivided 1/20 interest in the right to oil and gas underlying the Property.

Order reversed. Case remanded with instructions. Superior Court jurisdiction is relinquished.

---

[9] James C. Mason and Cora B. Fox (or their respective heirs) each continued to own an undivided 1/20 interest in the surface of the Property, inherited from Sarah Mason.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/22/2016