J-A12021-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SALLY FREED | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TERRI S. BALTIMORE AND SONI | : | No. 1248 MDA 2020 |
| BALTIMORE, HIS WIFE | : | |

Appeal from the Judgment Entered January 11, 2021,
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
Civil Action Law No. 10037 of 2016

BEFORE:  LAZARUS, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:　　　　**FILED: JUNE 30, 2021**

Sally Freed (Freed) appeals from the judgment,[1] entered in the Court of

Common Pleas of Luzerne County, after the court ruled in favor of Appellees,

Terri S. and Soni Baltimore (h/w) (the Baltimores), granting their counterclaim

for easement by necessity and also concluding that Freed had constructive

notice of an express easement crossing her property for a line that supplies

water to the Baltimores' property from a hilltop well.  After careful review, we

affirm on the basis of the trial court's opinions.

---

[1] Appellant purports to appeal from the trial court's July 7, 2020 order denying her post-trial motions.  However, we have amended the caption to reflect that the appeal properly lies from the judgment entered following disposition of the post-trial motions.  **See Mackall v. Fleegle**, 801 A.2d 577, 580 (Pa. Super. 2002) (appeal does not properly lie from order denying post-trial motions, but rather upon judgment entered following disposition of post-trial motions).

The instant matter involves a water line (Line) that traverses Freed's property and supplies water to the Baltimores' property. The parties own neighboring lots located at Harveys Lake (Lake), in Luzerne County, Pennsylvania. The Line starts at a well located upon a hill on a third party's property (Lot 13).[2] The Line proceeds downhill underground toward the Lake and along an adjacent street, eventually crossing underneath Freed's property and reappearing on the Baltimores' property.[3]

Freed acquired her property in September of 1990 from Gary Frank. The Baltimores acquired their property in June of 1985 from Joseph and Kathleen Salvo (h/w). The Baltimores' property consists of two parcels: a lakefront piece of property on Route 415 (which also includes a parking lot across Route 415) and 1/12 of a lot under which the Line runs. Freed and the Baltimores trace their title back to a common grantor, Harry Goldberg, who subdivided his land into 16 lots.

The Baltimores receive water from the Line that originates from Lot 13, runs down Harry Street, and then traverses underneath Freed's property. On October 16, 1950, the parties' predecessors-in-interest executed a Water

---

[2] The well is located within a shed that includes electronics, a pump, and four shut-off valves.

[3] Approximately five feet of the Line is exposed on the Freed property.

Supply Agreement (Agreement). The Agreement includes the following provisions:

> WHEREAS, **there is located on said premises and on the streets adjacent thereto, a water supply system consisting of water pump, equipment, and pipe for the furnishing of water to the owners of the various lots in the vicinity thereof**; and,
>
> WHEREAS, the parties hereto are seized or possessed of interests in certain parcels of land in the vicinity of the premises aforesaid; and
>
> WHEREAS, **it is the wish of the parties hereto that Lot No. 13 aforesaid and said water supply system shall be improved and maintained for the furnishing of an adequate water supply to the parties hereto, their heirs, successors and assigns**,
>
>         \*      \*      \*
>
> It is further mutually agreed between the parties hereto that **this agreement shall be perpetual, and at all times shall be construed as a covenant running with the land and be binding upon the parties hereto, their heirs, assigns, administrators, executors, and successors.**

Water Supply Agreement, 10/16/1950, at 1-2 (emphasis added).

Beginning in 1985, Terry Baltimore and Gary Frank worked together to clear the Line and reassemble it each spring. Freed's father, who lived on the Freed property for 60 years and owned it when the Baltimores purchased their property, never explicitly gave the Baltimores permission to use the Line under the Freed property.

In 2004, Freed placed a gazebo partially across the boundary line between the parties' properties; the Baltimores requested Freed move the

- 3 -

gazebo due to liability concerns and the county tax assessment. In 2007, Freed's husband wrote a letter to the Baltimores advising them to move the Line. Prior to 2007, Freed never objected to the Baltimores' use of the Line. In 2008, the court granted the Baltimores a preliminary injunction enjoining Freed from "interfering with the free flow of water across [the Freed Property] to the Baltimore Property." Dispositional Order, 10/2/08.

On September 27, 2016, Freed filed the instant complaint in ejectment and trespass against the Baltimores seeking possession of her property, an order directing the Baltimores to remove any underground water lines/and or other encroachments maintained by the Baltimores upon her property, and money damages. The Baltimores filed an answer, new matter, and counterclaim. In their counterclaim, the Baltimores asserted the doctrines of easement by necessity and prescriptive easement, and also sought a permanent injunction enjoining Freed from taking any action to interfere with the Line located on her property.

On July 23, 2019, a non-jury trial was held before the Honorable Richard M. Hughes, III. After trial, the court entered its decision in favor of the Baltimores, making the following legal conclusions:

- Freed has a right to possess and is in possession of her property and has exercised actual dominion over her property;

- The Baltimores have no duty to remove the Line from under Freed's property;

- Freed had constructive knowledge of the Line through an express easement established in the 1950 Agreement;

- The Baltimores reasonably held an easement by necessity in the Line;

- No other sources of water are available to the Baltimore property;

- The Baltimores do not have a prescriptive easement in the Line;

- The Baltimores use of the Line was originally permissive upon the purchase of their property and was not clearly adverse until 2007; and

- The express easement and easement by necessity renders a permanent injunction unnecessary.

Trial Court Opinion, Conclusions of Law, 2/7/20, at 6.

On February 18, 2020, Freed filed post-trial motions,[4] which the court denied on July 7, 2020. Judgment was entered in the matter on January 11, 2021. Freed filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On appeal, Freed raises the following issues for our consideration:

(1) Whether the learned trial judge erred when concluding that the 1950 Water Supply Agreement provided for an express easement.

(2) Whether the learned trial judge erred when granting the [Baltimores] an easement by necessity due to the fact that there was no testimony presented regarding the necessity

_____

[4] We note that Freed filed her post-trial motions one day beyond the prescribed 10-day period. *See* Pa.R.C.P. 227.1 ("Post-trial motions **shall** be filed within **ten days** after notice of nonsuit or the filing of the decision or adjudication in the case of a trial without jury or equity trial.") (emphasis added). However, where a trial court elects to hear untimely post-trial motions and addresses the alleged error on the merits, as in the instant case, we are bound to review the merits on appeal. *See Terletsky v. Prudential Proper. & Cas. Ins. Co.*, 649 A.2d 680, 684 n.8 (Pa. Super. 1994).

of an easement at the time of severance of title and whether there were alternative sources of water for their property.

Appellant's Brief, at 5.

In reviewing a trial court's determination following a bench trial, the appellate court's role is to "determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law." **Porter v. Kalas**, 597 A.2d 709, 711-12 (Pa. Super. 1991) (citation omitted). An appellate court must give the findings of the trial judge in a non-jury case the same weight and effect on appeal that the appellate court gives the verdict of a jury. **Id.** at 712 (citation omitted). Additionally, appellate courts must review the evidence in the light most favorable to the verdict winner, here the Baltimores. **Id.**

In her first issue, Freed argues that the court incorrectly concluded that the 1950 Agreement provided for an express easement. Specifically, she contends that the description of the water line in the Agreement does not include the Line that runs through her property and that, at most, the Agreement created "an obligation for cost sharing with regard to the well and water supply system on Lot 13 and the streets adjacent there to." Appellant's Brief, at 14. We disagree.

The Freed and Baltimore properties trace back to a common owner, Harry Goldberg; the chain of title of ownership of both properties traces back to the point of their common title. In 1930, Harry Goldberg conveyed Lot 13 to George Anderson via deed. Lot 13, which houses the well for the Line, has been supplying water to the surrounding properties as far back as the date

that the land was originally subdivided by Goldberg. The 1950 Water Supply Agreement states that the water supply system on Lot 13 "shall be improved and maintained for the furnishing of an adequate water supply to the parties hereto, their heirs, successors and assigns." Water Supply Agreement, 10/16/1950, at 1-2. It further provides that the "[a]greement **shall be perpetual**, and **at all times** shall be construed as **a covenant running with the land** and be **binding upon** the parties hereto, their **heirs**, **assigns**, administrators, executors, **and successors**." *Id.* (emphasis added).

Based on the Agreement's express language, it was reasonable for the trial court to conclude that an easement, dating back to 1950, has existed for the running of the Line that originates on Lot 13 and furnishes water to the Baltimores' property. Moreover, despite Freed's insistence, there is no language in the Agreement limiting its applicability only to the parcels on the Goldberg Map;[5] rather, the document specifically states that it applies to the owners of the land in the vicinity of the Line, which includes Freed and the Baltimores.

In her second issue, Freed contends that the trial judge incorrectly concluded that there was a "near absolute impossibility of alternative sources of water for the Baltimore property[,] making the existing [Line] more than a reasonable necessity." Appellant's Brief, at 13. Specifically, Freed argues that

_____

[5] The Goldberg Map is a reference to the plot of lots laid out for Harry Goldberg by Stuedevant-Dilley Engineering Company, Ltd., and recorded in the Luzerne County Map Book 2, at page 367.

there was no evidence adduced at trial with regard to whether, at the time of the original severance of title, there was necessity for an easement. *Id.* Additionally, Freed claims that the Baltimores did not inquire whether a well could have been drilled at their second parcel, a parking lot across Route 415, and then run diagonally under the road to their property.

"[A]n easement by necessity is also an implied easement[.]" *Youst v. Keck's Food Serv.*, 94 A.3d 1057, 1061 n.2 (Pa. Super. 2014). The three fundamental requirements for an easement by necessity are:

> (1) the titles to the alleged dominant and servient properties must have been held by one person; (2) this unity of title must have been severed by a conveyance of one of the tracts; and (3) the easement must be necessary in order for the owner of the dominant tenement to use his land, with the **necessity existing** both **at the time of the severance of title** and at the time of the exercise of the easement.

*Id.* at 1075 (emphasis added). "An easement implied on the grounds of necessity is always of *strict* necessity; it never exists as a mere matter of convenience." *Bartkowski v. Ramondo*, 219 A.3d 1083, 1092 (Pa. 2019) (emphasis in original).

In *Bartkowski*, our Supreme Court held that it was improper to require a party to prove "impossibility of alternative access," *id.* at 1096, in order to establish an easement by necessity. In coming to its holding, the Court noted:

> Determining whether a landowner has established necessity is a fact-intensive question, which defies a one-size-fits-all, bright-line standard. The central inquiry is whether, absent the recognition of an easement, the proposed dominant estate will be left without a means of ingress and egress, rendering the property inaccessible and, thus, unusable. A court must evaluate the

asserted necessity by assessing whether this untenable outcome will result in practice, not merely by asking whether some remote alternative is hypothetically possible in the abstract.

*Id.* at 1096. The Court listed the following, non-exhaustive factors that a court should consider in determining whether a landowner has established the requisite necessity for such an easement: the existence of zoning restrictions and the likelihood of obtaining necessary variances or exceptions; the existence of state or federal regulations that prohibit certain uses of land in question; the topography of the land and practicability of constructing alternative access; the environmental consequences of construction; the costs involved; and, to what extent the impediments existed at the time of the severance. *Id.* at 1096.

Based on the language in the Agreement, the court reasonably inferred that the necessity of the Line existed "at the time of the severance of title and at the time of the exercise of the easement," **Bartkowski**, **supra**, at 1092, where the parties traced the title of their properties to a common owner, the subject properties have obtained water via the Line for more than 70 years, and the Agreement includes the right of service of water to the present owners, their heirs, and assigns.

Finally, Freed takes issue with the third **Youst** factor—the necessity of the easement for use of the Baltimores' property. Here, an expert well-driller testified at trial that a well cannot be drilled on the lakeside front of the Baltimores' property due to overhanging power lines. **See** N.T. Non-Jury Trial, 7/23/19, at 44, 77. Moreover, the same well-driller expert testified that

drilling a well on the Baltimores' property across Route 415 "would be very hard to do" and would probably end up on the state right-of-way, requiring a pipe be punched underneath the state route to access the Baltimores' home or necessitating "infring[ement] on other neighbors['] property to get the equipment far enough off the road." *Id.* at 47, 49-50. Additionally, there was testimony presented at trial that no public water source was available for the Baltimore property, and that water cannot be drawn from the Lake and filtered for home use. *Id.* at 44, 49, 77.

Ultimately, the court concluded that "[t]he near absolute impossibility of alternative sources of water for the Baltimore[s' p]roperty make[s] the existing [] Line more than a reasonable necessity[.]" Trial Court Opinion, 2/7/20 at 15. We agree. *See Bartkowski*, *supra* at 1093 (literal impossibility of alternative access is unworkable standard for party seeking easement by necessity).

After reviewing the parties' briefs, relevant case law, and the certified record on appeal, we conclude that the trial court correctly entered judgment in favor of the Baltimores, finding an express easement and an easement by necessity. We rely upon the February 7, 2020 post-trial opinion and December 8, 2020 Rule 1925(a) opinion authored by Judge Hughes in affirming the trial court's judgment. The parties are directed to attach copies of Judge Hughes' decisions in the event of further proceedings in the matter.

Judgment affirmed.

- 10 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/30/2021